FILED
2022 Mar-09  AM 08:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **THOMAS L. POWELL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.:** |
| ) | |
| **VROOM, INC.; VROOM** ) | |
| **AUTOMOTIVE, LLC; ALLY** ) | |
| **FINANCIAL, INC. and ALLY BANK,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

Plaintiff **Thomas L. Powell**, by and through the undersigned counsel of record, hereby asserts this **Complaint** against Defendants **Vroom, Inc.**; **Vroom Automotive, LLC**; **Ally Financial, Inc.** and **Ally Bank** and states as follows:

## JURISDICTION AND VENUE

1.     This is a Complaint for legal and equitable relief to redress violations by Defendants of Powell's rights secured by the Constitution of the United States of America and by:

    a.  The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 and

    b.  the laws of the State of Alabama.

2.     Federal subject matter jurisdiction exists pursuant to:

    a.  28 U.S.C. § 1331, 1332, 1367, 2201 and 2202; and

b. 15 U.S.C. § 2310(d) with regard to the Magnuson Moss Warranty Act as the amount in controversy concerning all claims to be determined in the suit is over $50,000.

3.      Venue is proper in the Northern District of Alabama Southern Division under 28 U.S.C. §1391(b) in that a substantial portion of the events or omissions giving rise to this action occurred in this District because Defendants' contractual performance obligations, their actions, their misrepresentations and omissions made to Powell, and other wrongful conduct occurred in this district.  Further, the property that is the subject of the action is situated in this District.

## THE PARTIES

4.      Plaintiff **Thomas L. Powell** ("Powell") is an individual over the age of nineteen and a resident of Jefferson County, Alabama.

5.      Defendant **Vroom, Inc.** ("Vroom") is a foreign business corporation incorporated under the laws of the State of Delaware who conducts business in Jefferson County, Alabama and maintains its principal place of business in New York County, New York.

6.      Defendant **Vroom Automotive, LLC** ("Vroom") is a foreign business limited liability company formed under the laws of the State of Texas who conducts business in Jefferson County, Alabama and maintains its principal place of business in Fort Bend County, Texas.  Vroom, Inc. acquired "Left Gate Property Holding,

LLC d/b/a Texas Direct Auto and Vroom" in December 2015 and renamed it "Vroom Automotive, LLC" in March 2021. Vroom Automotive, LLC is the primary operating entity for Vroom, Inc.'s purchases and sales of used vehicles. Defendants Vroom, Inc. and Vroom Automotive, LLC shall be collectively referred to herein as "Vroom."

7.     Defendant **Ally Financial, Inc.** ("Ally") is a foreign business corporation incorporated under the laws of the State of Delaware who conducts business in Jefferson County, Alabama and maintains its principal place of business in Wayne County, Michigan. Ally Financial, Inc. is a bank holding company.

8.     Defendant **Ally Bank** ("Ally") is a Utah state-chartered bank who conducts business in Jefferson County, Alabama and maintains its principal place of business in Salt Lake County, Utah. Ally Bank is a subsidiary of Ally Financial, Inc. Ally Bank and Ally Financial, Inc. shall be collectively referred to as herein as "Ally."

## FACTUAL BACKGROUND

## I.     INTRODUCTION

9.     On May 13, 2021, Vroom fraudulently sold a 2017 Jeep Wrangler (the "Jeep") to Powell in Alabama. At the time of the sale, Vroom did not own the Jeep, did not have good title for the Jeep and did not have the Jeep's title in possession, as required by law. Vroom failed to disclose these material facts to Powell and instead,

advertised the Jeep for sale and fraudulently induced Powell to proceed with his purchase and financing of the Jeep, knowing that Vroom was not able to pass good title to Powell at the date of sale or of delivery.

10.    In reliance upon Vroom's false representations, Powell made $5,000 down payment to Vroom on the Jeep by means of credit card ($500) and by sending a money wire ($4,500) across state lines originating from Alabama.  In further reliance upon Vroom's false representations, Powell obtained financing through Vroom, of which Vroom immediately assigned its installment sales contract to its close business partner and $700 million floor plan financer, Ally.  When Vroom delivered the Jeep to Powell, Vroom failed to deliver good title and failed to timely procure good title, making it essentially worthless.  Vroom's wrongful actions caused Powell loss of use of the Jeep.  He has been unable to lawfully drive the Jeep due to multiple expired temporary tags and the delay in receiving proper Alabama vehicle registration and license plate.

11.    For over nine months since Powell's purchase of the Jeep, Vroom has ignored Powell's request to provide title, refund his money or provide an interim substitute vehicle comparable to the Jeep.

12.    For over nine months since Powell's purchase of the Jeep, Powell has had no assurances or guarantee that the Motor Vehicle Division of the Alabama Department of  Revenue (the "Alabama MVD") would issue Powell a vehicle

registration, license plate and title because Vroom did not own or have a valid transferrable title to the Jeep at the time of sale or delivery.   Due to Vroom's deception, Powell did not receive his Alabama license and application for title registration for the Jeep until February 25, 2022 – over nine months from the May 13, 2021 purchase.   To date, Powell is still uncertain whether Alabama will issue a title and if so, Vroom informed Powell the title would be a duplicate, resulting in a clouded title and diminished value of the Jeep.

13.   Vroom's misconduct has gravely and negatively impacted Powell.

14.   Vroom's conduct in selling vehicles, deceptive advertising and accepting payment without ownership, possession and delivery of good title is part of a pattern and practice in which Vroom defrauds of its customers by selling vehicles to which it does not have good title at the time of sale and delivery.   Vroom uses its financing partners like Ally in a conspiracy to aid, abet, encourage and facilitate vehicle sales with improper title.   For example, on August 31, 2021, Washington resident Heather D. Bendickson filed a complaint against Vroom and Ally in the Superior Court for the State of Washington (Pierce County) alleging Vroom's failure to deliver a vehicle title. *See Bendickson v. Vroom, Inc. and Ally Financial, Inc.*, Case No. 21-2-07283-8.   The case is currently pending in the United States District Court in the Western District of Washington.   *See Bendickson v. Vroom and Ally*, Case No. 3:21-cv-0572-DGE (W.D. Wash).   Similarly, on

November 11, 2021, New York resident Zachary Chuna filed a complaint against Vroom and JP Morgan Chase Bank, N.A. alleging that Vroom failed to deliver a vehicle title.  *See Chuna v. JP Morgan Chase Bank, N.A. and Vroom, Inc.*  On January 18 2022, Tampa, Florida television station WFLA reported that Florida's Department of Highway Safety and Motor Vehicles filed an administrative complaint against Vroom alleging that in 47 cases, the dealer failed to transfer titles to consumers within 30 days.  *See* Shannon Behnken, *Florida files 47-count complaint against car dealer Vroom over title issues*, WFLA (Jan. 18, 2022, 2:17 PM),    https://www.wfla.com/8-on-your-side/better-call-behnken/florida-files-47-count-complaint-against-car-dealer-vroom-over-title-issues/?ipid=promo-link-block1.

15.    As of March 7, 2022, Vroom's Texas location that sold Powell the Jeep maintained a solid "F" grade from the Better Business Bureau ("BBB") with an average 1.13 out of 5 star rating from 973 customer reviews.  Vroom has received 3,399 complaints made to the BBB over the past twelve months, with many exhibiting a pattern of similar wrongful conduct relating to Vroom's failure to deliver vehicle titles.  *See* Vroom business profile, Better Business Bureau (March 7, 2022),  https://www.bbb.org/us/tx/stafford/profile/used-car-dealers/vroom-0915-90044633.

16.    Powell brings this action seeking, at his election, rescission of his retail

purchase agreement with Vroom due to breach of warranty and fraud, and restitution; recission of his retail installment sale contract with Ally, and restitution; damages against Defendants pursuant to the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq*., the Alabama Uniform Commercial Code ("AUCC") § 7-2-101 *et seq*., the Alabama Deceptive Trade Practices Act § 8-19-1 *et seq*., and additional compensatory and punitive damages, and injunctive relief against Defendants pursuant to breach of contract, fraud, negligence and other claims alleged herein.

## II.    <u>VROOM AND ALLY</u>

17.    Vroom is an online retailer who deals in the retail buying and selling of used automobiles.

18.    The consumer transaction out of which this action arose is a transaction pursuant to the Federal Trade Commission "Holder Rule", 16 C.F.R. 433.2 and its Alabama counterpart, Ala. Code § 7-3-302.

19.    Vroom's business is closely connected and dependent upon its relationship with its floorplan financer, Ally.  In March 2020, Vroom entered a new vehicle floorplan facility with Ally Bank and Ally Financial, which replaced Vroom's previous vehicle floorplan facility with a committed credit line of up to $450.0 million.

20.    Vroom continues to finance its inventory primarily through a its credit

line with Ally.  According to Vroom's 2021 Form 10-K filed on March 3, 2022,

Vroom discussed its relationship with Ally as follows

> As of December 31, 2021, we finance our inventory primarily through the 2020 Vehicle Floorplan Facility with Ally Bank and Ally Financial (together, "Ally"), which was amended in December 2021 and provides a committed credit line of up to $700.0 million.
>
> The amount of credit available to us under the 2020 Vehicle Floorplan Facility is determined on a monthly basis based on a calculation that considers average outstanding borrowings and vehicle units paid off by us within the three immediately preceding months.  Approximately $187.2 million was available under this facility as of December 31, 2021. In February 2022, we amended the 2020 Vehicle Floorplan Facility to extend the maturity date to March 31, 2023. …

Vroom, Inc. Form 10-K 2021 at 87 (Mar. 3, 2022), https://ir.vroom.com/static-files/001082c3-fde3-4103-9931-f19c0f13569a.

21.    Ally is liable to Powell for its own misconduct and, by virtue of the

Holder Rules, is jointly and severally liable with Vroom to Powell for the

misconduct of Vroom herein.

22.    On information and belief, Vroom and Ally participated (directly or

indirectly) in, the conduct of a conspiracy to mislead, defraud or deceive customers

like Powell into purchasing and financing vehicles without good title.

23.    The conspiracy had ongoing mechanisms for directing its affairs on an

ongoing basis. Vroom uses Ally's multimillion dollar floor financing facility to

acquire vehicles in Vroom's inventory to solicit customer sales.  Once Vroom sells

a vehicle, it uses Ally as one of its financing partners as an assignee for Vroom's

retail installment sales contracts.  The conspiracy enables Vroom to reap profits from vehicle sales and in turn, Ally can earn interest income and other fees through the assigned consumer loans.  By selling and delivering vehicles prior to securing good title, Vroom reduces (or completely eliminates) its inventory turn time, increases its available capital to acquire more inventory and reduces the average interest expense per vehicle on Vroom's floor plan.  By receiving an assignment of a retail installment sale contract prior to Vroom's delivery of a good title to a customer, Ally can accelerate and enhance its revenues by Vroom's transfer of vehicles financed on the floor plan to individual consumer securitized loans assigned to Ally.

24.    The conspiracy uses customers like Powell seeking vehicle purchases and financing as tools to unlawfully boost profits for Vroom and Ally by selling and delivering vehicles without good title against state and federal law.

## III.    VROOM'S DECEPTIVE JEEP SALE AND FINANCING TO POWEL

25.    Vroom initially listed the Jeep for sale nationwide on April 8, 2021 through its website www.vroom.com.  Vroom did not own or have title to the Jeep at this time.

26.    In 2021, Powell began searching for an off-road four-wheel drive recreational vehicle for him and his family.  After extensive research, Plaintiff decided that a Jeep Wrangler would best fit his needs and lifestyle.

27.    Powell is a husband, father, avid outdoorsman, Boy Scout leader and

cyclist.  He desired to use the Jeep for his personal use and his family's recreational activities including Boy Scout trips, camping, hunting and transporting his family's bicycles.

28.     On May 13 2021, Powell located a Jeep that was advertised for sale by Vroom on its website www.vroom.com for a sale price of $37,499.00.

29.     Vroom advertised the Jeep to be in excellent condition with a relatively low mileage of 16,972 miles.  Powell especially liked the Jeep's color, features and its limited edition model.  Vroom made Powell comfortable with its listed price because Vroom advertised its process to be "Buying Made Easy," as stated prominently on Vroom's website:  "No haggling. No hassles. An easy and efficient car buying process— the way it should be."

30.     Powell also relied upon Vroom to deliver the Jeep with good title.  In Vroom's FAQ portion on its website www.vroom.com, Vroom explained to Powell and other buyers as follows:

> **Are you going to register my vehicle or will I have to?**
>
> We will do the title and registration on your behalf if we collected tax, title, and license fees; information which can be found in your deal paperwork. For these deals, login or create a username/password at vroom.com/myaccount/login for the latest status of your vehicle registration.

31.     After finding the Jeep advertised for sale on www.vroom.com, Powell decided to purchase it on May 13, 2021.   Vroom advertises on its website

www.vroom.com that its inventory of cars for sale as part of a "stringent selection process."    Vroom  represented  and  continues  to  represent  on  its  website www.vroom.com that, "We only sell cars and trucks with clean titles, that are free of fire, flood and frame damage and have accident-free CARFAX vehicle history reports at the time of purchase and sale."  This representation was materially false and misleading.  Powell relied on Vroom's representations in making his purchase decision.

32.    Powell also decided to finance a portion of the vehicle sale to Vroom. Vroom touts "easy registration" on its website www.vroom.com explaining, "When you finance with Vroom, we will register your vehicle on your behalf and mail your registration  and  plates  to  you."    Vroom's  apparent  "easy"  and  "no  hassle"  title registration,  gave  for  Powell  extra  incentive  to  seek  financing  through  Vroom. Vroom prominently lists Ally's name and logo on Vroom's website, stating: "We work with more than a dozen banks and lending partners to get the financing that works for you."

33.    Powell completed the application process online at Vroom's website www.vroom.com on May 13, 2021 and purchased the Jeep for a total of $40,316.28. In addition to the $37,499.00 purchase price, Vroom charged Powell $62.14 for Dealer's  Inventory  Tax,  $749.98  for  State  Sales  Tax,  $150.00  for  Dealer Documentary Fee, $125.00 for Title Fee, $110.66 for License and Registration Fee,

$25.50 for Inspection Fee, $895.00 for GAP Coverage and $699.00 for Delivery.

34.     Powell does not know what goods or services Vroom provided to him for the $150.00 Dealer Documentary Fee, the $125.00 Title Fee, the $110.66 License and Registration Fee, the $25.50 Inspection Fee and the $895.00 for GAP Coverage he paid.

35.     In connection with the May 13, 2021 Jeep sale, Vroom emailed Powell a DocuSign envelop with approximately 46 pages of preprinted documents including, but not limited to the Vroom Retail Purchase Agreement (the "Retail Purchase Agreement"), Motor Vehicle Retail Installment Sales Contract (the "RISC"), an Agreement to Furnish Insurance Policy, the Buyers Guide – Dealer Warranty, an odometer disclosure statement of 16,972 miles, the Limited Warranty with Roadside Assistance, the Roadside Assistance Limited Agreement & Membership Application, an Application for Texas Title and/or Registration, a Texas Application for Title Only, a Texas County of Title Insurance, a delivery fee, a Power of Attorney, a Texas Dealer's Reassignment of Title for a Motor Vehicle, a Guaranteed Asset Protection Deficiency Waiver Addendum, a Credit Application, a Credit Score.

36.     Vroom's Retail Purchase Agreement indicated that Vroom was selling the Jeep as dealer from its at 12053 Southwest Fwy (Hwy 59), Stafford, Texas 77477.  Left Gate Property Holding, LLC and Vroom  under the same dealer license

number P109181 out of Stafford, Texas and Houston, Texas. Vroom was not and is not an Alabama licensed car dealer pursuant to Ala. Code § 32-8-2(2).

37.    Under Texas law, for each vehicle acquired or offered for sale, the dealer must properly take assignment of any title, manufacturer's statement of origin, manufacturer's certificate of origin, or other evidence of ownership.

38.    When a Texas dealer sells a vehicle that will be transferred out of state, it must within 20 days of the sale, either file an application for certificate of title for the purchaser or deliver the properly assigned evidence of ownership to the purchaser.

39.    It was imperative for Powell that Vroom be able to convey him good title at the time to the Jeep. Vroom's Retail Purchase Agreement with Powell expressly states, in bold terms that, "**[w]e agree to transfer to you, and you agree to accept, title and ownership of the Vehicle at Vroom's address given above.**" This statement, along with Vroom's representations on its website www.vroom.com and conduct, constitute an express warranty under Alabama and federal law. Powell relied upon these representations, which were materially false and misleading.

40.    Vroom understands the importance of having a clear title when selling vehicles. Had Powell traded-in another vehicle in connection with his Jeep purchase, Vroom informed Powell in the Retail Purchase Agreement that he would be required to make the following warranty to Vroom:

**Trade-In Representation and Warranty:** Trade-In Representation and Warranty: If you are trading in a vehicle(s) as part of this transaction (the "Trade-In"), you represent and warrant that: (a) you have the right to sell the Trade-In; (b) you will provide Vroom with a valid and most current Certificate of Title (or documents allowing us to obtain it); (c) the Trade-In is free of all liens and encumbrances except those noted in the Agreement; (d) you have not made any misrepresentations about the Trade-In, including its mileage and condition; (e) the Trade-In does not have (and has never had) a salvage, flood damaged, or branded title; and (f) the Trade-In has air pollution equipment that works and meets any applicable pollution standards. ...

41.    Because Powell was purchasing a used car from Vroom, seeing Vroom's required trade-in representations and warranties for its acquired vehicle inventory gave him additional comfort in his purchase, which he relied upon, in believing Vroom would deliver good title to the Jeep.

42.    As part of his purchase, Powell informed Vroom that he was an Alabama resident and provided his residential address in Birmingham, Alabama.

43.    In connection with his purchase of the Jeep, Vroom induced Powell to execute an Application for Texas Title and/or Registration.  Vroom pre-filled application and represented to Powell that Vroom was the previous owner of the Jeep.  This representation was materially false and misleading.

44.    In the pre-filled Application for Title Only with the Texas Department of Motor Vehicles, Vroom represented to Powell that Ally would be the lienholder for the Jeep's title.

45.    On May 13, 2021, Powell issued a $500.00 credit card payment and

Vroom sent Powell wiring instructions.  On May 13, 201, Powell also authorized a $4,500.00 wire transfer to be sent to Vroom on May 14, 2021 from Alabama through Wells Fargo bank to complete his $5,000.00 down payment.

46.     At the direction of Vroom, on May 13, 2021 Powell completed a credit application online that was submitted to Ally.

47.     At the direction of Vroom, Powell obtained a financed loan for the remaining $35,316.28 of the Jeep purchase price through Vroom by means of the RISC entered into on May 13, 2021.

48.     Vroom represented and identified the Jeep's make, model, year and VIN number to Powell in the RISC.

49.     Vroom approved Powell for a loan and immediately upon Powell's consummation of the purchase assigned the RISC to Ally.

50.     Pursuant to the Retail Installment Sales Contract, Vroom represented to Powell in all capital letters in bold, "**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF**."

51.     Unfortunately, Vroom and Ally, with intent to deceive, concealed and failed to disclose to Powell that Vroom did not own or have clear title to the Jeep

when Vroom offered and sold the Jeep to Powell on May 13, 2021, and later when it delivered the Jeep to him.  Vroom breached its express warranty to transfer title and ownership of the Jeep to Plaintiff.  Because Vroom did not have title and ownership of the Jeep when, it was not able to lawfully transfer ownership of the Jeep to Powell at the time of the May 13, 2021 sale or subsequent delivery.

52.    Vroom's procurement of $4,500 from Powell amounts to wire fraud under 18 U.S.C. § 1343 as Vroom, with knowledge that it did not have title to the Jeep, voluntarily and intentionally devised and participated in a scheme to defraud Powell out of $4,500.00, issued wire instructions to Powell making it reasonably foreseeable that interstate wire communications would be used, and Vroom in fact used interstate wire communications to receive Powell's funds.

53.    In connection with his purchase, Vroom issued a dealer warranty to Powell and the Jeep was still under a manufacturer's warranty.  Without good title to the Jeep, any future warranty claims Powell may have a risk of dishonor.

54.    Vroom advertised on its website that it would be responsible for transmitting to the respective state department of motor vehicles on behalf of certain buyers the application paperwork for title and permanent registration for the purchased vehicles.

55.    One category of buyers for whom Vroom would transmit the application paperwork for title and permanent registration were buyers from whom

Vroom collected sales tax, title, license and registration fees.

56.     As Vroom collected these charges and fees from Powell, Vroom was responsible for transmitting on behalf of Powell to the Alabama MVD the application for certificate of title and permanent registration of the Jeep, along with all the required documents supporting the application.

57.     One of the supporting documents which the Alabama MVD required Vroom to submit was the then-current certificate of title for the Jeep.

58.     Based on the Vroom website and what Vroom represented to Powell before he purchased the Jeep, Powell's understanding was that Vroom would deliver the Jeep to him with a temporary tag and would transmit paperwork for the application for certificates of title and registration to the Alabama MVD in a timeframe such that he would receive from the Alabama MVD the title, permanent registration and plates for the Jeep within thirty days after his purchase of the Jeep.

59.     Defendant Vroom, with intent to deceive, also fraudulently induced Powell to purchase Guaranteed Asset Protection Deficiency Waiver Addendum (a "GAP Waiver") for $895.00, by concealing and failing to disclose that and protections of the GAP Waiver would not be available due to the lack of title on the Jeep.  Pursuant to disclaims of the GAP Waiver, Vroom disclaimed coverage for fraud and title issues as follows:

F.  **This Addendum shall be terminated if any material fact(s) have been concealed or misrepresented, or in the case of fraud**.

G.  **Coverage under this Addendum is not available for (a) vehicles with salvage or junk title,** (b) a Covered Vehicle that has a purchase date that is different than the purchase date of this Addendum, (c) A Total Loss occurring prior to the Effective Date of this Addendum, (d) a Covered Vehicle that was held as security under any wholesale, floor plan, field warehouse or any type of financing made to a dealership or (e) a vehicle that does not meet the Addendum's definition of a Covered Vehicle. If a request for a Waiver Benefit is denied for any of these disclaimers or any other reason or circumstance that should have been known at the time of sale and therefore rendered the vehicle ineligible for coverage, the Customer will receive a full refund of the Addendum Retail Price.

(emphasis added).

60.    By offering a GAP Waiver to Powell that would not provide any coverage due to Vroom's fraud and lack of title, Vroom misled and misrepresented to Powell that he needed a GAP Waiver.

61.    Vroom, with intent to deceive, further fraudulently charged Powell $62.14 for a Dealer's Inventory Tax.  Vroom represented that this charge was "intended to reimburse the dealer for ad valorem taxes on its motor vehicle inventory."  Because Vroom did not have title to the Jeep at the time of the May 13, 2021 sale, Powell's payment of this charge could not have reimbursed Vroom for any ad valorem taxes it paid on the Jeep's at the time of the sale.

62.    Powell purchased the Jeep on May 13, 2021 as a result of Vroom's fraudulent inducement of Powell to electronically execute documents sent to him by Vroom concerning the purchase of the Jeep.  Powell detrimentally relied upon

Vroom's material misrepresentations and suppressions concerning the Jeep's title.

63.    The Jeep's certificate of title was not among the documents which Vroom sent to Powell.

64.    The Jeep's certificate of title should have been among the documents which Vroom sent to Powell.

65.    On May 13, 2021, Vroom had not delivered the Jeep to Powell.

66.    On May 13, 2021, Powell had not seen the physical Jeep.

67.    On May 13, 2021, Powell had not seen the odometer in the Jeep.

68.    On May 13, 2021, Vroom had not delivered the Jeep's then-current certificate of title to Powell.

69.    On May 13, 2021, Vroom did not have possession of said certificate of title.

70.    On May 13, 2021, Vroom did not have assignment of the Jeep evidenced on said certificate of title.

71.    On May 13, 2021, Powell had not seen said certificate of title.

72.    On May 13, 2021, Vroom did not own or have title to the Jeep.

73.    In late May 2021, Vroom delivered the Jeep to Powell.

74.    At the time of delivery of the Jeep, Vroom did not provide Powell with a temporary license registration tag, an application for certificate of title or the then-current certificate of title.

75.    Under both Alabama and Texas law, a vehicle seller must at delivery provide the certificate of title to the purchase. *See* Ala. Code § 32-8-44 ("If an owner transfers his interest in a vehicle, other than by the creation of a security interest, he shall, at the time of the delivery of the vehicle, execute an assignment and warranty of title to the transferee in the space provided therefor on the certificate or as the department prescribes, and cause the certificate and assignment to be mailed or delivered to the transferee or to the department."; Tex. Trans. Code § 501.0721 ("A person, whether acting for that person or another, who sells, trades, or otherwise transfers a used motor vehicle shall deliver to the purchaser at the time of delivery of the vehicle  a properly assigned title or other evidence of title as required under this chapter.").

76.    At no time before the delivery of the Jeep to Powell did Vroom have possession of said certificate of title.

77.    At no time before the delivery of the Jeep to Powell did Vroom execute said certificate of title.

78.    At no time before the delivery of the Jeep to Powell did Vroom deliver said certificate of title to Powell.

79.    At no time before the delivery of the Jeep to Powell did Powell see said certificate of title.

80.    When Vroom delivered the Jeep to Powell, Vroom had still not

delivered said certificate of title to Powell for examination and execution by Powell, as required by the federal Motor Vehicle Information and Cost Savings Act, 49 U.S.C. § 32701 *et seq.*

81.    Pursuant to Ala. Code § 32-16-2, every used car dealer who is a nonresident of the State of Alabama that brings a used motor vehicle into the state for sale or resale must register within 10 days from date of entering of said used motor vehicle into Alabama with the probate judge of the county in which said used motor vehicle is brought.

82.    Vroom did not register the Jeep in Alabama within 10 days from its delivery to Powell.

83.    By not providing a temporary tag to Powell, Vroom made it unlawful for Powell to operate the Jeep in Alabama.  Under Ala. Code § 32-6-51, every motor vehicle operator must attach a rear license tag when driving on a city street or public highway, or face fines of $500 and driver's license suspension for 60 days to six months.

84.    After Powell made multiple inquiries to Vroom about the status of his license tag, title and registration, Vroom sent Powell his first temporary tag for the Jeep in June 2021.  The tag was issued by the State of Texas and was valid for 30 days.

85.    In the days leading up to the temporary tag's expiration, Powell had

still not received any communications from Vroom or documents from the Alabama MVD informing him that he could obtain his proper Alabama registration for the Jeep.

86.    Powell grew increasingly anxious with the passage of time as the expiration of the Texas temporary registration drew near because he knew he would be unable to operate the Jeep with proper title and registration once the temporary registration expired.

87.    Powell decided to contract Vroom by email and telephone again to inquire about the status of his Alabama certificate of title and permanent registration.

88.    In order to telephone Vroom during Vroom's normal telephone business hours, Powell was forced to take time off from work or otherwise reschedule his work duties.

89.    On July 12, 2021, Vroom emailed Powell informing him that the Jeep's temporary tag had or would be expiring soon. Vroom advised Powell that Vroom could request an additional 30-day tag if needed one, but he would need to provide a copy of his insurance declaration page evidencing compliance with the State of Texas's minimum insurance levels.

90.    On July 13, 2021, Powell provided Vroom with his insurance information.  The State of Texas's required liability levels are $30,000 bodily injury each person, $60,000 bodily injury each accident and $25,000 property damage each

accident.  These levels are higher than those required by the State of Alabama.  In order to obtain an additional temporary tag, Powell had to purchase liability insurance at a higher level that is required in Alabama.

91.     Vroom then sent Powell a second temporary tag in July 2021 that was valid for thirty days.

92.     On August 13, 2021, Powell contacted Ally to inquire about the status of his title and did not receive any material update about the status of his title.  Ally did not disclose to Powell that Vroom did not own or have title to the Jeep when it sold it to him on May 13, 2021.

93.     On August 23, 2021, Vroom Title Specialist Brianna Averette emailed Powell in response to one of his inquiries requesting an update on his Jeep's title registration.  Ms. Averette informed Powell:

> I work in the titles and registration department here at Vroom. You requested an update on your registration. Currently we are having to issue a duplicate title for the 2017 Jeep Wrangler Unlimited due to an error from the previous owner. The State of Alabama does not allow errors on titles and requested for us to issue an duplicate. We are still waiting on the new title to be mailed to us. Turn around time for title is currently 4-6 weeks. Once we receive the new title it will be mailed to the DMV to complete the registration.

94.     Vroom's Ms. Averette admitted to Powell that the Jeep's title was clouded with an error.  Ms. Averette also failed to disclose to Powell that Vroom did not own nor have title to the Jeep when it sold it to Powell on May 13, 2021.

95.     Vroom's notice to Powell that it was going to issue a duplicate title for

the Jeep gave Powell grave concerns about its value and ability to resell it.  Powell

responded to Vroom on the same day listing multiple problems he was having with

Vroom, including the following:

> a. The time lapse from purchase date without providing proof of ownership and clean title;
> b. Vroom's overall poor customer service;
> c. Vroom's failure to issue new temporary tags, causing a risk of ticket if driving the Jeep;
> d. Diminution in value of the Jeep due to issuance of duplicate title;
> e. Fines and fees the State of Alabama for untimely registration;
> f. Payment of insurance premiums on a Jeep that cannot be legally driven;
> g. Potential interstate wire fraud by Vroom; and
> h. Risk that the Jeep purchase was stolen or fraudulent.

96.     On August 23, 2021, Brianna Averette of Vroom responded to Powell

and admitted Vroom's lack of customer service:

> I do apologize for the lack of customer service. Attached will be a copy of the original title for the vehicle that Vroom requested a duplicate for. As for the fees the state of Alabama will have, we do offer reimbursement for any additional fees the DMV or Tax Office may provide.  A new case has been open for you to receive a new temp tag, the department that handles tags will contact you by the end of the week. I have forwarded this information over to management to look into and help resolve. They will be able to gather more information for you.
>
> If you have any other questions please let me know and again i do apologize for the inconvenience.

97.     Attached to Ms. Averette's email to Powell was a copy of the original

Jeep title issued to Vault Trust by the State of New York July 14, 2017, along with

an April 7, 2021 lien release letter from Ally.  The backside of the title evidenced that Vault Trust sold the Jeep to Vroom on May 17, 2021 with an odometer reading of 16,970 miles.

98.    This was the first time that Vroom ever provided a copy of the Jeep's original title to Powell.  Unfortunately, the Jeep's title evidenced that Vroom did not own the Jeep nor have title to it when Vroom sold it to Powell on May 13, 2021.  Ms. Averette did not mention in her email to Powell that Vroom did not own the Jeep at the time of the sale to Powell and she did not mention the discrepancy in the odometer readings.  Ms. Averette's representation to Powell that the Jeep's title had an "error from the previous owner" was materially false and misleading because the original title clearly evidenced that the previous owner had not even sold the Jeep to Vroom until *after* Vroom sold the Jeep to Powell.

99.    Moreover, the Jeep's original title also evidenced that on May 17, 2021, the Jeep had an odometer reading of 16,970 miles, which is two miles less than the Jeep's odometer reading of 16,972 that Vroom represented to Powell when he purchased the vehicle four days earlier on May 13, 2021.  In addition to intentionally and fraudulently concealing from Powell that Vroom did not own or hold title to the Jeep on May 13, 2021, Vroom also intentionally and fraudulently misrepresented the Jeep's actual mileage, causing further clouds on any future title in addition to the duplicate title.

100.   The Jeep's original title evidencing the sale to Vroom from its original owner on May 17, 2021 shows that Vroom did not have in its possession the Jeep's then-current certificate of title at the time Vroom advertised and sold the Jeep to Powell.

101.   The certificate of title to the Jeep had not been transferred to Vroom at the time Vroom sold the Jeep to Powell.

102.   Based on the original title showing the sale to Vroom, it is clear that May 17, 2021 was the earliest that Vroom could have had a title to the Jeep.

103.   As the expiration date of Powell's second temporary tag for the Jeep neared,  Powell was obliged to disrupt his work schedule again and resume placing telephone calls and emails to Vroom to inquire about the status of his Alabama permanent registration and title for the Jeep.

104.   On August 26, 2021, Vroom Titles and Registration representative Chad May emailed Powell to inform him that his request for a third temporary tag was completed.

105.   Vroom sent Powell a third temporary tag in approximately late August 2021.

106.   Pursuant to Ala. Code § 32-6-214, Alabama allows the issuance of temporary tags for 20 days from the day of issuance.  Alabama only allows renewals of temporary tags for a total of 60 days only upon the issuance by an authorized

probate judge or other county official. *Id.*

107.   After the expiration of Powell's third temporary tag, Powell could not

lawfully drive the Jeep in Alabama.

108.   On October 7, 2021, Powell emailed Chad May of Vroom:

Please give me a update before the end of the week on where my title is for this jeep.

I purchased this jeep in May, now we are in October, I still have no title and no tag for the jeep.

I am getting very tired of this, I will be requesting my money back in full on the jeep and all the repairs I have had to make to it during this time.

This is beyond unacceptable

109.   On October 7, 2016, Powell received an automated response from

Vroom

Thanks for your email. To simplify our communication process, we are asking all customers to reach out to us via our Contact Us page or phone ((855) 524-1300). As such, this inbox is no longer being monitored. Please follow the instructions provided in previous emails or reach out to us via one of the ways mentioned above.

If you have previously reached out to Support, please reference your

Case #.

Regards,

Customer Experience Team

110.   As the expiration date of Powell's third temporary tag for the Jeep

neared, Powell was obliged to disrupt his work schedule again and resume placing telephone calls and emails to Vroom to inquire about the status of his Alabama permanent registration and title for the Jeep.

111. Vroom, apparently recognizing that it still could not lawfully obtain title for the Jeep in Alabama, obtained for Powell a fourth temporary registration tag from Texas.

112. Instead of admitting the truth about the Jeep's title, or by offering Powell a refund, a replacement car or a rental, Vroom chose to continue its efforts to defraud Powell. Obtaining a fourth temporary registration tag from the State of Texas when Vroom could not lawfully obtain title for the Jeep was Vroom's way of deceptively circumventing Alabama laws which limits its residents temporary tag renewals only for a 60 days.

113. In or around October 2021, Vroom sent Powell a fourth temporary tag.

114. As the expiration date of Powell's fourth temporary tag for the Jeep neared, Powell was obliged to disrupt his work schedule again and resume placing telephone calls and emails to Vroom to inquire about the status of his Alabama permanent registration and title for the Jeep.

115. Vroom, apparently recognizing that it could not lawfully obtain title for the Jeep in Alabama, obtained for Powell a fifth temporary registration tag from Texas.

116.   Obtaining a fifth temporary registration tag from the State of Texas when Vroom could not lawfully obtain title for the Jeep was Vroom's way of continually and deceptively circumventing Alabama laws which limits its residents temporary tag renewals only for a 60 days.

117.   In or around the second week of November 2021, Vroom sent Powell his fifth and final temporary tag.

118.   On November 19, 2021, Powell emailed Vroom: "Please help, Still no title and my temporary tags are once again expired.  This has been a horrible experience."

119.   On November 19, 2021, Powell contacted Ally to inquire about the status of his title and he did not receive any material update.  Ally did not disclose to Powell that Vroom did not own or have title to the Jeep when it sold it to him on May 13, 2021.

120.   On November 22, 2021, Vroom responded to Powell, "We will be submitting the request to the Texas DMV which can take up to 3 business days.  Once we receive your new temporary tag we will email you a copy and FedEx a plastic protected hard copy."

121.   On November 23, 2021, Powell contacted Ally to inquire about the status of his title and did not receive any material update.  Ally did not disclose to Powell that Vroom did not own or have title to the Jeep when it sold it to him on

May 13, 2021.

122.   On December 17, 2021, Ally representative Crayton of Executive Consumer Relations issued a letter to Powell responding to his November 23, 2021 inquiry and admitting the following:

  a.   That Vroom assigned the RISC to "Ally Bank."
  b.   That Ally did not have a copy of the RISC available for Powell's review.
  c.   That Ally obtained an instruction on December 16, 2021 (apparently from Vroom) that Powell's title would be perfected by December 30, 2021.
  d.   That Ally is not able to address all of Powell's concerns.
  e.   That Ally regrets that Powell could not solve this issue through normal customer service channels and any inconvenience or frustration this matter may have caused.

123.   Pursuant to Ala. Code § 32-8-65, a lienholder named in a certificate of title shall, upon written request of the owner or of another lienholder named on the certificate, disclose any pertinent information as to his or her security agreement and the indebtedness secured by it.   Vroom, as original lienholder, and Ally as the assigned lienholder, failed to disclose pertinent information regarding their purported security interest in the Jeep.

124.   Ally did not disclose to Powell that Vroom did not own or have title to the Jeep at the time of Vroom's May 13, 2021 sale to Powell.   Instead, Ally blamed Powell for not being able to solve his problem through normal customer service channels.   Ally also did not disclose to Powell that it was the original lienholder of the Jeep for the first owner as evidenced on the original title.   To further confuse

matters, Ally's letter said that the RISC was assigned to "Ally Bank" even though Powell's purchase documents for the Jeep identify "Ally Financial" as the lienholder.

125.    Powell telephoned Vroom almost every Monday, and sometimes on Friday, from July through December 2021.  Powell informed Vroom and Ally that, as the buyer of the Jeep, he should have received the title to the Jeep at delivery and that Vroom's withholding of the title and delay in allowing him to register the Jeep in Alabama was improper and against the law.

126.    The excerpts from emails and telephone calls above made by Powell are only a sample of Powell's numerous communications he made to Vroom and Ally concerning the multiple impending expirations of the five temporary tags and the status of his Alabama certificate of title and permanent registration.

127.    Powell called and emailed Ally nearly as much as he contacted Vroom. Representatives from Ally informed Powell that Vroom's numerous title issues with its customers were a "major problem."  Ally failed to inform Powell that it, along with Vroom, was the source of the "major problem" as Ally was jointly responsible with Vroom for attempting to finance the Jeep without good title.

128.    Powell never was able to speak with anyone at Vroom or Ally who could provide him with accurate information or an understanding about the status of his Alabama certificate of title and permanent registration.

129.   None of the many Vroom or Ally customer service representatives that spoke to Powell ever directly disclosed to Powell that Vroom did not own or have title to the Jeep when it sold it to Powell on May 13, 2021, or that it did not have good title to the Jeep when it delivered it to Powell.

130.   In December 2021, Vroom ceased responding to Powell's inquires and would not take his calls or respond to his emails.

131.   Powell's fifth temporary tag for the Jeep expired on or about December 10, 2021.

132.   Not having the use of the Jeep has caused Powell grave stress, hardship and inconvenience, and has drastically diminished his enjoyment and quality of life.

133.   At no time did Vroom ever offer to repurchase, replace or provide an equivalent rental car to Powell to make up for his loss of use for the Jeep.

134.   Vroom would not even refund Powell's purchase of the Jeep.  In several attempts, Powell requested his money back for the Jeep by attempting to sell it to Vroom through its website www.vroom.com.  Vroom would not repurchase the Jeep from Powell because Powell could not provide evidence of the Jeep's title.

135.   Powell's title to the Jeep was not perfected by December 30, 2021 as represented by Ally.

136.   On January 3, 2022, Powell emailed Vroom:  "Once again my tags are expired and I still don't have a title?  Please help."  Again, Vroom demonstrated its

lack of customer service by failing to respond to Powell's inquiry.

137.   On January 24, 2022, Ally sent a letter to Powell indicating that, "We have been unable to verify that the security interest of Ally has been filed" and made the bold request Powell to send a copy of his title and registration of the Jeep.

138.   Powell had no way of complying with Ally's request because Vroom had yet to deliver to Powell a copy of his title and registration of the Jeep.

139.   On January 31, 2022, Vroom Car Specialist Mina Fuqua emailed Powell in response to an inquiry:

> Vroom has not provided your vehicle registration since the purchase in May 2021. I have created a case for you and emailed the department, Please contact (include name, number) titlemanagement@vroom.com Phone extension VTQ

140.   Vroom's Ms. Fuqua failed to disclose to Powell that Vroom did not own or have title to the Jeep when it sold it him on May 13, 2021, and did not have good title when it delivered the Jeep to Powell.

141.   As of February 23, 2022, Vroom had not provided to Powell any evidence that it had sent to the Alabama MVD the application for a certificate of title, the then-current certificate of title and other documents necessary for the titling and registration of the Jeep in the State of Alabama in Powell's name.

142.   As a consequence of Vroom's said failure, as of February 23, 2022, Powell had not received his Alabama State certificate of title, permanent registration or license plates from the Alabama MVD.

143.   As a consequence of Vroom's said failure, as of February 23, 2022, Powell had not received any documents from the Alabama MVD.

144.   Further, as of February 23, 2022, Vroom had still not delivered to Powell the Jeep's then-current certificate of title for examination and execution by Powell.

145.   As a consequence of Vroom's said failure, as of February 23, 2022, Powell had not received the Alabama certificate of title, permanent registration or license plates from the Alabama MVD.

146.   Further, as of February 23, 2022, Vroom had still not delivered to Powell the Jeep's then-current certificate of title for examination and execution by Powell.

147.   Under Ala. Code §§ 32-8-30 and 32-8-31 every motor vehicle owner is required to apply for a certificate of title or show evidence that current owner and operator is the recorded owner and operator on a currently effective certificate of title issued by another state and the certificate of title is being held by a recorded lienholder.

148.   Under Ala. Code § 32-8-32, no Alabama motor vehicle license (or license plate) can be issued until an application for certificate of title, or a certificate of title, is presented to the issuing official.  Because Vroom's concealment that it did not have title, and extended delay in providing necessary title documents to the

Alabama MVD, Powell was unable to submit an Application for Certificate of Title for the Jeep.

149.   On or about February 24, 2022, Powell received from the Alabama MVD – not through Vroom or Ally – a letter dated February 15, 2022 (and postmarked February 22, 2022) indicating that "[d]ocuments needed to register your motor vehicle have been received by the Department of Revenue at the Jefferson County Courthouse …"  Powell finally could take the next steps needed to apply for a lawful Alabama registration and license plate for the Jeep.

150.   On February 25, 2022, Powell visited the Alabama MVD and obtained his Alabama license and registration for the Jeep, paying a total of $1,239.51 in required taxes and fees.  Again, Powell was forced to take time off from work or otherwise reschedule his work duties to deal with the Jeep's problems created by Vroom and Ally.

151.   During his visit, the Alabama MVD provided to Powell an Alabama Application for Certificate of Title.  As evidenced on the preprinted application, Vroom did not obtain title in Texas to Jeep until January 15, 2022.  This Texas title issued was apparently the duplicate title that Vroom informed Powell it was procuring.  It is also further evidences that Vroom did not have good title for the Jeep in its possession at delivery to Powell in May 2021 as required by law.

152.   During his visit, the Alabama MVD provided to Powell a check stub

dated February 11, 2022 from Vroom's apparent agent Automotive Title Company, LLC evidencing a check in the amount of $1,764.33 paid to Travis A. Hulsey, Director of the Jefferson County, Alabama Department of Revenue for the registration of the Jeep.

153.   Based on this check stub, it is clear that it was on February 11, 2022, *at earliest*, that Vroom first sent potentially proper paperwork to the Alabama MVD concerning the Jeep.

154.   To date, neither Vroom or Ally has provided Powell with any reasonable explanation of the title error Vroom created by selling the Jeep to Powell when it did not own it or have title.

155.   To date, neither Vroom or Ally has provided Powell with a copy of the Alabama Certificate of Title for the Jeep.

156.   Powell would not have purchased the Jeep had he known that Vroom did not have the certificate of title in its possession at the time of his purchase.

157.   Powell knows that the Alabama MVD's issuance of registration and license plates does not necessarily mean that the Alabama MVD will issue a title certificate for the Jeep.

158.   In connection with Powell's Alabama Application for Certificate of Title, Vroom provided the Alabama MVD with an undated "Affidavit of Corrections" signed by Vroom Title and Registration Specialist Adrianne Granger,

which reads as follows:

> This letter is to address the date on the back of the title. Vroom purchased the vehicle on 5/17/21. Once pay off was received, the bank released the electronic title to Vroom. The title issued date reads 07/14/21 because this is the day that the title was printed after the lien had been released.

159.   The affidavit is a sworn admission by Vroom that it did not own the Jeep or have title to the Jeep at the time it sold or delivered the Jeep to Powell.

160.   Powell had never before seen this affidavit and has never seen the referenced July 14, 2021 title, or received verification of it being surrendered to any proper authority.

161.   The Jeep's January 15, 2022 Texas Certificate of Title surrendered to the Alabama MVD contains the following representations that are materially misleading and inaccurate, or inconsistent with Powell's Alabama Application for a Certificate of Title:

a.   Vroom is listed as the owner (as of January 15, 2022);

b.   Vault Trust is listed as the previous owner;

c.   The odometer reading is "ACTUAL MILEAGE" of 16,970 (as of January 15, 2022);

d.   There is "NONE" listed for lienholder; and

e.   The title is branded "VIN CERTIFICATION WAIVED."

162.   The VIN CERTIFICATION WAIVED branding on the Jeep's title

means that Vroom did not supply Texas with a vehicle inspection report or Form VTR-68-A when procuring title.  The VIN CERTIFICATION WAIVED branding will remain on the Jeep's record and cause the Jeep's value to be diminished.

163.   Vroom did not supply Powell a copy of its January 15, 2022 title prior to his February 25, 2022 visit to the Alabama MVD.  As a result, Powell did not have truthful and accurate information from Vroom concerning the Jeep when he submitted his Alabama Application for a Certificate of Title.  Powell's Alabama Application for a Certificate of Title submitted on February 25, 2022 contain the representations Vroom made to him on May 13, 2021 concerning the Jeep, including the following:

a.  That Powell purchased the Jeep on May 13, 2021;

b.  That the odometer reading is "Actual" at 16,972 miles (as of 5/13/21); and

c.  That Ally is lienholder.

164.   When, and if, Powell ever receives a certificate of title for the Jeep, it will still be clouded not only because Vroom did not own the Jeep when it sold it to Powell, but also due to the discrepancies in the duplicate titles to the vehicle. Powell's Alabama Application for Certificate of Title shows Powell's purchase of the Jeep and Ally's lien to be May 13, 2021.  Vroom did not purchase the Jeep until May 17, 2021 and had to obtain a duplicate title issued in Texas on January 15, 2022.

165.   Vroom's conduct clouding the Jeep's title has diminished the Jeep's value.

166.   Powell would not have purchased the Jeep had he known that he would be receiving assignment of duplicate or branded certificate of title, as well as a clouded certificate of title.

167.   When a vehicle was last previously registered in another state, unless security is provided (*e.g.,* a bond), the Alabama MVD must issue a "distinctive certificate of title" branded as follows: "This vehicle may be subject to an undisclosed lien." Ala. Code § 32-8-39.

168.   Since his purchase until February 25, 2022, due to Vroom's failures, Powell has been unable to lawfully drive the Jeep for extended periods of times as if he had proper title.  On February 25, 2022, Powell was finally able to lawfully drive the Jeep with an Alabama tag over nine months after he originally purchased it on May 13, 2021.  Even assuming that Vroom's second and third temporary tags were lawfully issued (which Powell denies due to Vroom's fraudulent actions and concealment of its lack of title at the time of sale to Powell), Alabama only allows 60 days worth of renewals under Ala. Code § 32-6-214 following the issuance of the original temporary tag's expiration.  Thus, Powell was without the ability to lawfully drive the Jeep for many months.

169.   Due to Vroom's failures, Powell has been unable enjoy the use of the

jeep for his personal and family use in the manner that he would have if he had had proper title.

170.   Due to Vroom's failures, Powell lost the use and enjoyment that would have been afforded by the Jeep had he been able to operate it with proper title.

171.   Due to Vroom's failures, Powell has been paying for insurance, storage, upkeep and maintenance on the Jeep with clouded title.

172.   Due to Vroom's Failures, the temporary tags sent by Vroom were improperly issued or expired, and Powell was not able to operate the Jeep on the public highways.

173.   Vroom knew it did not have good title to the Jeep at the time of sale to Powell.

174.   By sale of the Jeep to Powell, Vroom represented to Powell that Vroom had good title to the Jeep at the time of sale to Powell.

175.   In the alternative, Vroom knew it did not have the certificate of title to the Jeep at the time of sale to Powell.

176.   By sale of the Jeep to Powell, Vroom represented to Powell that Vroom had the certificate of title to the Jeep at the time of sale to Powell.

177.   Vroom deliberately and fraudulently failed to inform Powell that it did not have good title to the Jeep at the time of sale to Powell.

178.   In the alternative, Vroom deliberately and fraudulently failed to inform

Powell that it did not have the certificate of title to the Jeep at the time of sale to Powell.

179.   Vroom's misconduct towards Powell is not an isolated instance of failure but is part of a pattern of Vroom's misconduct towards members of the public generally.

180.   Vroom regularly sells vehicles to members of the public then fails timely to submit paperwork for the titling and registration of those vehicles to the respective departments of motor vehicles, just like Vroom did to Powell.

181.   Powell had no knowledge of any complaints by members of the public about Vroom until after he began to encounter his own hardships caused by Vroom's misconduct.

182.   Ally knew or should have known that Vroom did not have title to the Jeep and is complicit with Vroom.  Under the terms of the terms of the RISC, and applicable federal and state Holder Rules, Ally is liable for Vroom's wrongful conduct, including breach of contract, breach of duty of good faith, breach of express and implied warranties, violation of state and federal law, unfair and deceptive acts and practices, misrepresentations, fraud, negligence and other causes of actions alleged herein.  Ally is not a holder in due course of any instrument signed by Powell and Vroom is bound by its contract with Powell to be jointly and severally liable for all remedies and relief which Powell may obtain against Vroom.

183.   Due to Ally's massive $700 million floor plan credit facility it provides to Vroom, Ally works in tandem with Vroom to facilitate the inducement of customers like Powell to purchase vehicles with improper title.  Even without having a proper certificate of title issued on the Jeep for Powell, Ally continued to request monthly payments from Powell pursuant to the RISC, and aided and abetted Vroom in suppressing the truth about the Jeep's title.

184.   Vroom's and Ally's misconduct has resulted in Powell's inability to drive the Jeep, and caused Powell grave worry and uncertainty with respect to whether Vroom has passed on to him clean title to the Jeep.  Because Vroom and Ally have yet to provide Powell of the truth of his  prolonged delay in delivering to him for his examination and execution the certificate of title current at the time of Vroom's sale and delivery of the Jeep to him, Powell is greatly anxious that there is a cloud on his ownership of the Jeep.

185.   In addition to the disruptions to Powell's work and work schedule, Vroom's and Ally's misconduct caused and continues to cause Powell hardship, distress, stress, emotional anxiety, sleeplessness, loss of enjoyment of life, loss of money, loss of the value of money and loss of time.

## COUNT I
## BREACH OF CONTRACT

186.   Powell hereby incorporates the allegations set forth above as if fully set forth herein.

187.   As set forth above, Vroom fraudulent induced Powell to enter a Retail Purchase Agreement whereby Vroom agreed to sell the Jeep to Powell.

188.   As set forth above, Vroom fraudulently induced Powell to enter a RISC whereby Vroom agreed to providing financing for the Jeep to Powell.   Vroom immediately assigned the RISC to Ally.

189.   Vroom failed to honor the terms and materially breached its Retail Purchase Agreement and RISC with Powell by failing to comply with the terms of the including, but not limited to, failure to deliver title to Plaintiff's vehicle, assessing unauthorized fees, costs and violating state and federal law.

190.   Powell satisfactorily performed and continues to perform all his contractual obligations he has with Vroom and Ally.

191.   Under the terms of the terms of the RISC assigned to Ally, and applicable federal and state Holder Rules, Ally is liable for Vroom's breaches of contract.

192.   Defendants also breached their duties of good faith to Powell regarding the Retail Purchase Agreement and RISC by selling the Jeep in violation of Alabama state and federal law, by failing to disclose that Vroom did not own or have title to the Jeep at the time of Powell's May 13, 2021 purchase and subsequent delivery, by failing to deliver title for the Jeep to Powell, by selling Powell useless GAP Coverage, and by placing him in the repeated position of being unable to lawfully

drive the Jeep due to its myriad of title problems, among other wrongful acts alleged herein.

193.   As a direct, foreseeable and proximate result of Defendants' breaches of the Retail Purchase Agreement and the RISC, Powell has suffered and continues to suffer has suffered, and continues to suffer, compensatory damages, which include the purchase price and fees for the Jeep, interest, loss of use of the Jeep, diminution in value of the Jeep, insurance premiums paid on the Jeep, license and registration fees, and other direct and consequential damages to be proven at trial, as set forth hereinabove.

WHEREFORE, PREMISES CONSIDERED, Powell demands judgment against Defendants, jointly and severally, for compensatory damages plus interest and costs of this matter, and all other relief available under the law.

## COUNT II
## BREACH OF EXPRESS AND IMPLIED WARRANTIES
## ALABAMA UCC, ALA. CODE § 7-2-101 *et seq.*

194.   Powell hereby incorporate the allegations set forth above as if fully set forth herein.

195.   Powell is a "buyer" within the meaning of Alabama Uniform Commercial Code ("AUCC"), Ala. Code § 7-2-103(1)(a).

196.   Vroom is a "seller" within the meaning of AUCC, Ala. Code § 7-2-103(1)(d).

197.   Vroom is a "merchant" within the meaning of AUCC, Ala. Code § 7-2-104(1).

198.   Ally is a "financing agency" within the meaning of AUCC, Ala. Code § 7-2-104(2).

199.   The Jeep is a "good" within the meaning of AUCC, Ala. Code § Ala. Code § 7-2-105(1).

200.   Under AUCC, Ala. Code § 2-312 there arises in every contract for sale a warranty by the seller that the title conveyed to the buyer shall be good and its transfer rightful, and that the good shall be delivered free of any security interest, lien or other encumbrance of which the buyer at the time of contracting has no knowledge.

201.   Under AUCC, Ala. Code § 2-312 the warranty of title arose in Vroom's sale of the Jeep to Powell.

202.   Pursuant to Ala. Code § 7-2-312, "there is in a contract for sale a warranty by the seller that:  (a) The title conveyed shall be good, and its transfer rightful …"

203.   Pursuant to Ala. Code § 7-2-313, express warranties by a seller like Vroom are created by affirmation of fact or promise, a description of the goods, or a sample or model.

204.   Under AUCC, § 2-314 a warranty that goods are merchantable is

implied in every contract for their sale.

205.   Under AUCC, § 2-314 the warranty that the Jeep is merchantable is implied in Vroom's sale of the Jeep to Powell.

206.   Pursuant to Ala. Code § 7-2-401:

(1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (Section 7-2-501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this title. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the article on secured transactions (Article 9A), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place, and in particular and despite any reservation of a security interest by the bill of lading:

(a) If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

(b) If the contract requires delivery at destination, title passes on tender there.

…

207.   Vroom identified the Jeep by make, model and VIN number in the Retail Purchase Agreement with Powell.  Under Alabama law, title to the Jeep was to pass to Powell upon delivery.

208.   Vroom, to induce Powell to purchase the Jeep, through actions and omissions, represented to Powell that the title to the Jeep was proper and it complied with federal and state law.  Vroom's Retail Purchase Agreement expressly states, in bold terms that, "**[w]e agree to transfer to you, and you agree to accept, title and ownership of the Vehicle at Vroom's address given above.**"   Vroom also represented to Powell on its website www.vroom.com that, "We only sell cars and trucks with clean titles, that are free of fire, flood and frame damage and have accident-free CARFAX vehicle history reports at the time of purchase and sale." *Id.*

209.   These statements above constitute an express warranty under Alabama and federal law.

210.   Vroom breached the warranty of title under Ala. Code § 2-312 in that Vroom did not have in its possession good title to the Jeep at the time Vroom delivered the Jeep to Powell.

211.   In the alternative, Vroom breached the warranty of title in that Vroom did not have title to the Jeep at the time Vroom delivered the Jeep to Powell.

212.   After nine months following Vroom's sale of the Jeep to Powell, Vroom finally provided documents to Alabama MVD for Powell to apply for a certificate of title.  Powell has yet to receive a certificate of title.

213.   Powell's inability to obtain title from the Alabama MVD has been caused entirely by Vroom's breach of the warranty of title and failure to timely

submit the required paperwork to the Alabama MVD.

214.   Vroom therefore did not deliver to Powell, at the time of delivery of the Jeep, any title, good or otherwise.

215.   On information and belief, any title Vroom or Ally may now possess, if any, is a duplicate certificate of title which may be branded as subject to the rights of a person under the original certificate.

216.   Powell did not bargain with Vroom to buy a vehicle with a duplicate title which may be subject to the rights of a person under the original certificate.

217.   Due to its breach of the warranty of title, Vroom has rendered the Jeep of zero value, because no reasonable purchaser would buy the Jeep from Powell with a title branded as a duplicate that may be subject to the rights of a person under the original certificate.

218.   Further, due to Vroom's breach of the warranty of title, Powell will never know when a person with a superior claim to the Jeep may surface and claim ownership of it, so Powell will never enjoy quiet title.

219.   Vroom's breach of the warranty of title was fraudulent in nature, egregious, in bad faith, was wanton and malicious, and part of a pattern directed at the public generally, as shown above.

220.   In addition, Vroom breached the warranty of merchantability under Ala. Code § 2-314 in that the Jeep was not merchantable at the time Vroom delivered

the Jeep to Powell.

221.   At the time Vroom delivered the Jeep to Powell Vroom did not have in its possession the title to the Jeep

222.   In the alternative, Vroom did not have title to the Jeep at the time Vroom delivered the Jeep to Powell.

223.   Further, on information and belief, any title Vroom may now possess, is a duplicate certificate of title which may be branded as subject to the rights of a person under the original certificate.

224.   A vehicle without a title would not pass without objection in the trade

225.   A vehicle with a title branded as a duplicate certificate that may be subject to the rights of a person under the original certificate would not pass without objection in the trade.

226.   The Jeep would therefore not pass without objection in the trade, in violation of the warranty of merchantability.

227.   In addition, after purchasing the Jeep on May 13, 2021, Powell did not receive his Alabama registration and license plates until on or about February 25, 2022.

228.   After the expiration of not one, but five temporary tags (several of which were not lawfully allowed to be used in Alabama), Powell was unable to lawfully operate the Jeep on the public roadways for want of lawful registration.

229.   A vehicle that cannot be driven for want of lawful registration would not pass without objection in the trade.

230.   Vroom's breach of the warranty of merchantability was fraudulent in nature, egregious, in bad faith, was wanton and malicious, and part of a pattern directed at the public generally, as shown above.

231.   Vroom's aforesaid breach of the warranty of title constitutes a breach of the AUCC.

232.   Vroom's aforesaid breach of the warranty of merchantability constitutes a breach of the AUCC.

233.   Powell was a bona fide purchaser of the Jeep in that he purchased the Jeep in good faith for value.   Vroom breached its express warranty to transfer title and ownership of the Jeep to Powell in that that its representations of title were inaccurate and unreliable.   Vroom did not have title and ownership to the Jeep at the time of Powell's May 13, 2021 purchase and thus could not lawfully transfer ownership of it to Powell.

234.   Ally is liable to Powell pursuant to the "Holder Rule" 16 C.F.R. 433.2 and its Alabama state analog, Ala. Code § 7-3-302, for Vroom's violation of the warranty of title, AUCC, Ala. Code § 2-312.

235.   Ally is liable to Powell pursuant to the "Holder Rule" 16 C.F.R. 433.2 and its Alabama analog, AUCC, § 7-3-302 for Vroom's violation of the warranty of

merchantability, Ala. Code § 7-2-314.

236.   Under the terms of the terms of the RISC assigned to Ally, and applicable federal and state Holder Rules, Ally is liable for Vroom's breaches of warranty.

237.   As a result of Defendants' breaches of warranty, Powell has suffered and will continue to suffer damages, including, but not limited to, the loss of the benefit of his bargain, embarrassment, humiliation, mental distress, anxiety, costs and attorney fees incurred in obtain relief.

238.   Powell is entitled to and reserves the remedies, at his election, of rescission of the Retail Purchase Agreement and the RISC and restitution of all monies paid by him under the purchase agreement and the RISC, in lieu only of that portion of actual damages attributable to the Jeep's diminished value.

239.   Defendants are liable to Powell for actual pecuniary damages totaling at least  $40,316.28, comprising the price, fees and charges listed on the Retail Purchase Agreement and the RISC ($37,499.00 + $62.14 + $749.98 + $150.00 + $125.00 + $110.66 + $25.50 + $895.00 + $699.00).

240.   This amount excludes additional actual pecuniary damages for insurance premiums paid by Powell during the time when he was unable to drive the Jeep and when he had to procure insurance at liability levels higher than required in Alabama when Vroom obtained Texas temporary tags for Powell.  These damages

also include Powell's loss of use of the Jeep, diminution in value of the Jeep, and license and registration fees.

241.  In addition, Defendants are liable to Powell for incidental and consequential damages.

242.  Defendants are also liable to Powell for actual non-pecuniary or compensatory damages to fully and adequately compensate Powell for the injuries and damages he sustained, including, embarrassment, humiliation, mental distress, and anxiety.

243.  Defendants are further liable to Powell for punitive damages in an amount at least three times the measure of his compensatory damages.

WHEREFORE, Powell demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, plus interest and costs of this matter, and all other relief available under the law.

### COUNT III
### MAGNUSON MOSS WARRANTY ACT
### 15 U.S.C. § 2301 *et seq.*

244.  Powell hereby incorporate the allegations set forth above as if fully set forth herein.

245.  Powell is a "consumer" within the meaning of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq*.

246.  Vroom is a "warrantor" within the meaning of the MMWA.

247.   The Jeep is a "consumer product" within the meaning of the MMWA.

248.   15 U.S.C. § 2310(a)(1) requires Vroom, as warrantor, to remedy any defect, malfunction or nonconformance of the Jeep within a reasonable time and with charge to Powell as Plaintiff, as defined in 15 U.S.C. § 2304(d).

249.   Vroom identified the Jeep by make, model and VIN number in the Retail Purchase Agreement with Powell.  Under Alabama law and MMWA, title to the Jeep was to pass to Powell upon delivery.

250.   Vroom, to induce Powell to purchase the Jeep, through actions and omissions, represented to Powell that the title to the Jeep was proper and it complied with federal and state law.  Vroom's Retail Purchase Agreement expressly states, in bold terms that, "**[w]e agree to transfer to you, and you agree to accept, title and ownership of the Vehicle at Vroom's address given above.**"  Vroom also represented to Powell on its website www.vroom.com that, "We only sell cars and trucks with clean titles, that are free of fire, flood and frame damage and have accident-free CARFAX vehicle history reports at the time of purchase and sale." *Id.*

251.   These statements above constitute an express warranty under the MMWA and Alabama law.

252.   Vroom breached the warranty of title under MMWA in that Vroom did not have in its possession good title to the Jeep at the time Vroom delivered the Jeep to Powell.

253.   In the alternative, Vroom breached the warranty of title in that Vroom did not have title to the Jeep at the time Vroom delivered the Jeep to Powell.

254.   After nine months following Vroom's sale of the Jeep to Powell, Vroom finally provided documents to Alabama MVD for Powell to apply for a certificate of title.  Powell has yet to receive a certificate of title.

255.   Powell's inability to obtain title from the Alabama MVD has been caused entirely by Vroom's breach of the warranty of title and failure to timely submit the required paperwork to the Alabama MVD.

256.   Vroom therefore did not deliver to Powell, at the time of delivery of the Jeep, any title, good or otherwise.

257.   On information and belief, any title Vroom may now possess, if any, is a duplicate certificate of title which may be branded as subject to the rights of a person under the original certificate.

258.   Powell did not bargain with Vroom to buy a vehicle with a duplicate title which may be subject to the rights of a person under the original certificate.

259.   Due to its breach of the warranty of title, Vroom has rendered the Jeep of zero value, because no reasonable purchaser would buy the Jeep from Powell with a title branded as a duplicate that may be subject to the rights of a person under the original certificate.

260.   Further, due to Vroom's breach of the warranty of title, Powell will

never know when a person with a superior claim to the Jeep may surface and claim ownership of it, so Powell will never enjoy quiet title.

261.   Vroom's breach of the warranty of title was fraudulent in nature, egregious, in bad faith, was wanton and malicious, and part of a pattern directed at the public generally, as shown above.

262.   In addition, Vroom breached the warranty of merchantability under MMWA in that the Jeep was not merchantable at the time Vroom delivered the Jeep to Powell.

263.   At the time Vroom delivered the Jeep to Powell Vroom did not have in its possession the title to the Jeep

264.   In the alternative, Vroom did not have title to the Jeep at the time Vroom delivered the Jeep to Powell.

265.   Further, on information and belief, any title Vroom may now possess, is a duplicate certificate of title which may be branded as subject to the rights of a person under the original certificate.

266.   A vehicle without a title would not pass without objection in the trade

267.   A vehicle with a title branded as a duplicate certificate that may be subject to the rights of a person under the original certificate would not pass without objection in the trade.

268.   The Jeep would therefore not pass without objection in the trade, in

violation of the warranty of merchantability.

269.   In addition, after purchasing the Jeep on May 13, 2021, Powell did not receive his Alabama registration and license plates until on or about February 25, 2022.

270.   After the expiration of not one, but five temporary tags (several of which were not lawfully allowed to be used in Alabama), Powell was unable to lawfully operate the Jeep on the public roadways for want of lawful registration.

271.   A vehicle that cannot be driven for want of lawful registration would not pass without objection in the trade.

272.   Vroom's breach of the warranty of title was fraudulent in nature, egregious, in bad faith, was wanton and malicious, and part of a pattern directed at the public generally, as shown above.

273.   Vroom's aforesaid breach of the warranty of title constitutes a breach of the MMWA and Alabama law.

274.   Vroom's aforesaid breach of the warranty of merchantability constitutes a breach of the MMWA and Alabama law.

275.   Powell was a bona fide purchaser of the Jeep in that he purchased the Jeep in good faith for value.  Vroom breached its express warranty to transfer title and ownership of the Jeep to Powell in that that its representations of title were inaccurate and unreliable.  Vroom did not have title and ownership to the Jeep at the

time of Powell's May 13, 2021 purchase and thus could not lawfully transfer ownership of it to Powell.

276.   Ally is liable to Powell pursuant to the "Holder Rule" 16 C.F.R. 433.2 and its Alabama state analog, Ala. Code § 7-3-302, for Vroom's violation of the warranty of title under the MMWA.

277.   Ally is liable to Powell pursuant to the "Holder Rule" 16 C.F.R. 433.2 and its Alabama analog, AUCC, § 7-3-302 for Vroom's violation of the warranty of merchantability under the MMWA.

278.   Under the terms of the terms of the RISC assigned to Ally, and applicable federal and state Holder Rules, Ally is liable for Vroom's breaches of warranty.

279.   As a result of Defendants' breaches of warranty, Powell has suffered and will continue to suffer damages, including, but not limited to, the loss of the benefit of his bargain, embarrassment, humiliation, mental distress, anxiety, costs and attorney fees incurred in obtain relief.

280.   Powell is entitled to and reserves the remedies, at his election, of rescission of the Retail Purchase Agreement and the RISC and restitution of all monies paid by him under the purchase agreement and the RISC, in lieu only of that portion of actual damages attributable to the Jeep's diminished value.

281.   Defendants are liable to Powell for actual pecuniary damages totaling

at least  $40,316.28, comprising the price, fees and charges listed on the Retail Purchase Agreement and the RISC ($37,499.00 + $62.14 + $749.98 + $150.00 + $125.00 + $110.66 + $25.50 + $895.00 + $699.00).

282.   This amount excludes additional actual pecuniary damages for insurance premiums paid by Powell during the time when he was unable to drive the Jeep and when he had to procure insurance at liability levels higher than required in Alabama when Vroom obtained Texas temporary tags for Powell.  These damages also include Powell's loss of use of the Jeep, diminution in value of the Jeep, and license and registration fees.

283.   In addition, Defendants are liable to Powell for incidental and consequential damages.

284.   Defendants are also liable to Powell for actual non-pecuniary or compensatory damages to fully and adequately compensate Powell for the injuries and damages he sustained, including, embarrassment, humiliation, mental distress, and anxiety.

285.   Defendants are further liable to Powell for punitive damages in an amount at least three times the measure of his compensatory damages.

WHEREFORE, Powell demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, reasonable attorney's fees, plus interest and costs of this matter, and all other relief available under the law.

## COUNT IV
## VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT
## ALA. CODE § 8-19-1 *et seq.*

286.   Powell hereby incorporate the allegations set forth above as if fully set forth herein.

287.   Powell is a consumer as defined by Ala. Code § 8-19-3(2).

288.   Vroom represented and advertised on its website www.vroom.com to Powell that buying the Jeep would be a) "Buying Made Easy," and that b) there would be "No haggling. No hassles. An easy and efficient car buying process— the way it should be."

289.   Powell's purchase of the Jeep was not "buying made easy."  Vroom's sales process for Powell was replete with haggling and hassles, along with a difficult and an inefficient buying process.

290.   Vroom advertised and represented on its website www.vroom.com to Powell that, "We will do the title and registration on your behalf if we collected tax, title, and license fees; information which can be found in your deal paperwork."

291.   Vroom did not properly do the title and registration on Powell's behalf because it did not own the Jeep or have title at the time of sale or delivery to Powell.

292.   Vroom advertised on its website www.vroom.com to Powell that its inventory of cars for sale as part of a "stringent selection process"  and that Vroom "only sell cars and trucks with clean titles, that are free of fire, flood and frame

damage and have accident-free CARFAX vehicle history reports at the time of purchase and sale."

293.   The Jeep that Vroom sold to Powell did not have a clean title because Vroom did not own it and have good title at the time of sale or delivery to Powell.

294.   Vroom represented to Powell in its Retail Purchase Agreement expressly states, in bold terms that, "**[w]e agree to transfer to you, and you agree to accept, title and ownership of the Vehicle at Vroom's address given above.**"

295.   Vroom did not own or have good title to the Jeep at the time of sale to Powell.

296.   Vroom did not have good title to the Jeep at the time it delivered it to Powell.

297.   Vroom represented to Powell in its odometer disclosure that the Jeep's odometer reading was 16,972 on May 13, 2021.

298.   Vroom did not own the Jeep when it made this odometer disclosure. The Jeep's original title evidenced that the odometer reading on May 17, 2021 was 16,970 miles.

299.   By making these false representations, advertisements and notice to Powell, Vroom:

   a. Passed off goods or services as those of another in violation of Ala. Code § 8-19-5(1).

b.  Caused confusion or misunderstanding as to the approval, or certification of goods or services, in violation of Ala. Code § 8-19-5(2);

c.  Caused confusion or misunderstanding as to the affiliation, connection, or association with, or certification by another, in violation of Ala. Code § 8-19-5(3);

d.  Used deceptive representations or destinations of geographic origin in connection with goods or services, in violation of Ala. Code § 8-19-5(4);

e.  Represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have, in violation of Ala. Code § 8-19-5(5);

f.  Represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another, in violation of Ala. Code § 8-19-5(7);

g.  Disparaged the goods, services, or business of another by false or misleading representation of fact, in violation of Ala. Code § 8-19-5(8);

h.  Advertised goods or services with intent not to sell them as advertised, in violation of Ala. Code § 8-19-5(9);

i.  Knowingly failed to identify damaged goods as damaged goods if they are damaged to the point of decreasing their value or rendering the goods unfit for the ordinary purpose for which they were purchased, in violation of Ala. Code § 8-19-5(12);

j.  Misrepresented the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction, in violation of Ala. Code § 8-19-5(14);

k.  Misrepresented the accurate amount of miles on the Jeep on its odometer with the intent of deception, in violation of Ala. Code § 8-19-5(15);

l.  After receipt of payment for goods or services, failed to ship the goods or furnish such services within the time advertised or otherwise represented, in violation of Ala. Code § 8-19-5(17);

m.  Intentionally misrepresented that a warranty or guarantee conferred or involved certain rights or remedies, in violation of Ala. Code § 8-19-5(21);

n.  In selling a new motor vehicle, failed to disclose material damage to the motor vehicle, specifically including, but not limited to, its title,

in violation of Ala. Code § 8-19(22);

o. Engaged in any other unconscionable, false, misleading, or deceptive actor practice in the conduct of its trade, in violation of Ala. Code § 8-19-5(27).

p. Engaged in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of its trade, in violation of Ala. Code § 8-19-5(27).

300.   Vroom breached the Alabama Deceptive Trade Practices Act by these actions, which were deceptive on their face.

301.   Vroom's deceptive acts and practices were willfully and wantonly committed by Vroom in the conduct of a business, trade or commerce or the furnishing of a service within the State of Alabama.

302.   Vroom's deceptive acts and practice were consumer-oriented.

303.   Vroom's deceptive acts and practice were consumer-oriented in that Vroom's aforesaid misconduct in its business practices was not limited to Powell but extended to Vroom's practices with other consumers.

304.   Vroom's deceptive acts and practices are recurring and directed at consumers at large and said acts and practices are the sort that Vroom performs on a routine basis in its business of selling automobiles and are the sort that do harm similarly-situated consumers.

305.   Vroom's deceptive trade practices alleged herein are fraudulent in nature, egregious, in bad faith, wanton and malicious, and part of a pattern and practice directed at the public generally.

306.   Many other consumers and governments have filed lawsuits against Vroom and complained to the BBB and in other places about Vroom's aforesaid deceptive business practices.

307.   Vroom's deceptive acts and practices have a broader impact on consumers at large who purchase automobiles from Vroom.

308.   Vroom's deceptive acts and practices were also deceptive in a material way, as alleged above.

309.   Vroom's violations of the Alabama Deceptive Trade Practices Act described above caused Powell to suffer monetary damages and he is entitled up to three times his actual damages and attorney's fees under Ala. Code § 8-19-10.

310.   Because Vroom is not registered to do business in the state of Alabama, does not maintain a place of business or keep assets in this state, the 15 day demand requirement of Ala. Code § 8-19-10(1)(e) is inapplicable.  Nonetheless, Powell has issued multiple demands to Vroom for relief, but they have gone unanswered as described fully herein.  Moreover, any further demand to Vroom would be futile because Vroom ceased communicating with Powell and has never made any effort to remedy Powell's grievances.

311.   Ally is liable to Powell pursuant to the "Holder Rule" 16 C.F.R. 433.2 and its Alabama state analog, Ala. Code § 7-3-302, for Vroom's violation of the Alabama Deceptive Trade Practices Act.

**WHEREFORE**, Powell demands judgment against Defendants, jointly and severally, for compensatory damages, mental anguish damages, punitive damages, interest, costs, reasonable attorney's fees, and such other and further relief as this Court deems just and proper.

### COUNT V
### FRAUDULENT INDUCEMENT AND SUPPRESSION

312.   Powell hereby incorporate the allegations set forth above as if fully set forth herein.

313.   Vroom, in its website representations and direct communications with Powell, misrepresented (or allowed or caused to be misrepresented) and omitted material facts concerning the Jeep's title from representations made to Powell and communications, willfully to deceive, or recklessly without knowledge and acted upon by Powell, or by mistake and innocently and acted upon by Powell, and committed fraud upon Powell, within the meaning of Alabama Code §§ 6-5-100 through 6-5-104, *et seq.*  Such fraud induced Powell to execute a Retail Purchase Agreement and RISC for the Jeep on May 13, 2021 in connection with the Jeep's purchase.

314.   Without limiting the generality of the foregoing, Vroom, through its

website, agents and employees, intentionally misrepresented to Powell, either affirmatively or by omission, the following material facts (as more specifically described herein), which were relied upon by Powell in inducing him to purchase the Jeep:

a.  That buying the Jeep would be  "Buying Made Easy";

b.  That there would be "No haggling. No hassles. An easy and efficient car buying process— the way it should be";

c.  That, "We will do the title and registration on your behalf if we collected tax, title, and license fees; information which can be found in your deal paperwork."'

d.  That its inventory of cars for sale as part of a "stringent selection process";

e.  That Vroom "only sell cars and trucks with clean titles, that are free of fire, flood and frame damage and have accident-free CARFAX vehicle history reports at the time of purchase and sale.";

f.  That, "[w]e agree to transfer to you, and you agree to accept, title and ownership of the Vehicle at Vroom's address given above."

g.  That Vroom could sell Powell the Jeep;

h.  That Vroom had good title to the Jeep;

i.  That the title to the Jeep was being transferred to Powell;

j.  That Powell's title interest in the Jeep would be proceed with the respective DMVs for the disclosed fee;

k.  That the Jeep would be covered by Powell's purchase of GAP Coverage;

l.  That the Jeep's odometer reading was 16,972 on May 13, 2021 when in fact the Jeep's original title evidenced that the odometer reading on May 17, 2021 was 16,970 miles;

m.  That there was an "error from the previous owner" in the Jeep's title;

n.  That Vroom had a pattern and practice of selling vehicles without good title.

315.  Vroom used its false and misleading statements and omissions made to Powell to coerce him to sign the Retail Purchase Agreement and the RISC in order to sell the Jeep when it did not own it or have good title.

316.  Under the terms of the RISC assigned to Ally and pursuant to the "Holder Rule" 16 C.F.R. 433.2 and its Alabama state analog, Ala. Code § 7-3-302, Ally is liable for Vroom's fraudulent misrepresentations and suppressions.

317.  Without limiting the generality of the foregoing, Ally (who was aware from Powell's credit application Powell would be purchasing the Jeep), through its agents and employees, intentionally misrepresented to Powell, either affirmatively or by omission, the following material facts (as more specifically described herein),

which were relied upon by Powell in inducing him to continue making payments pursuant to the RISC:

    a.  That Vroom could sell Powell the Jeep;

    b.  That Vroom had good title to the Jeep;

    c.  That Ally was a prior lienholder of the Jeep for the original owner;

    d.  That Ally's original lien on the Jeep was released as of at least April 7, 2021;

    e.  That the title to the Jeep was being transferred to Powell;

    f.  That Vroom had a pattern and practice of selling vehicles without good title;

318.   Ally used its false and misleading statements and omissions made to Powell to induce him to continue making payments on the Jeep when Ally knew the RISC on the Jeep was not secured by good title.

319. Vroom and Ally knew that Powell would rely on their misrepresentations and suppressions.  Vroom and Ally (1) each had material roles in devising and implementing the frauds described herein; (2) each benefited in substantial amounts from the frauds described herein; (3) each occupied a vastly superior position of knowledge and access to information than Powell through their access to the Jeep's history and their close financial relationship; (4) each were responsible for their misleading and false information to Powell; and (5) each knew

and expected that their false and misleading information, and the omissions of material facts, would be conveyed to and relied upon by Powell.

320.   Vroom and Ally, with their conspiracy and aiding and abetting of one another, (1) have made millions of dollars in wrongful profits from selling and financing vehicles with bad title; (2) were responsible for dissemination or allowing the dissemination of false and misleading information to Powell, and each knew and expected that their false and misleading information, and the omissions of material facts, would be conveyed to Powell; (3) under obligations of good faith and fair dealing, owed duties of care, full disclosure, and abstention from self-interested dealing to Powell; (4) occupied a position of vastly superior knowledge the Jeep and its title history than did Powell; (5) had a material role in permitting or implementing the frauds described herein; (6) had affirmative duties or otherwise were situated such that special circumstances existed warranting the imposition of affirmative duties of care, loyalty and disclosure upon the true facts for the benefit of Powell.

321.   Vroom and Ally communicated half-truths and suppressed, concealed, and omitted to disclose material facts which, under the special circumstances of this case, they were under a duty to communicate or cause to be communicated truthfully and fully to Powell, which constitutes fraud.

322.   Vroom and Ally have knowingly, willfully, and/or recklessly deceived Powell through their misleading and omissive activity.

323.   Vroom and Ally were in possession of the material undisclosed facts and willfully or knowingly or recklessly concealed them, acting in concert and conspiracy, engaged in the omissive, and therefore deceptive and manipulative and fraudulent, acts, with the intent to take advantage of the position of inferior knowledge and ignorance of the true facts on the part of Powell, and to take advantage of Powell's trust and confidence in them, and with the intent to defraud Powell.

324.   Vroom and Ally fraudulently concealed from Powell the full extent of their misrepresentations and suppressions.

325.   The wrongful actions described herein are continuing in nature.  Powell has been, and will continue to be, damaged as the direct and proximate result of the actions of Vroom and Ally.

326.   As a direct and proximate cause of Defendants' fraud and suppression, Powell has incurred damages including, but not limited to, the amount (and not including prejudgment interest which continues to accrue) the value of the Jeep, interest, loss of use of the Jeep, diminution in value of the Jeep, insurance premiums paid on the Jeep, license and registration fees, and all other damages necessary to fully and adequately compensate Powell for the injuries and damages he sustained.

327.   The actions Defendants have caused and continue to cause Powell to endure severe emotional distress, mental anguish and anxiety.  The conduct of

Defendants was attended by such malicious, intentional, willful, reckless, wanton and/or outrageous conduct that an award of exemplary damages is necessary and appropriate to punish Defendants for such conduct and to make an example of them and to deter repetitions of such conduct.  Powell is therefore entitled to punitive damages under the facts of this case.

WHEREFORE, Powell demands judgment against Defendants, jointly and severally, for actual and punitive damages plus interest, all costs of this proceeding, and all other relief available under law.

## COUNT VI
## NEGLIGENCE, GROSS NEGLIGENCE AND/OR WANTONNESS

328.   Powell hereby incorporates the allegations set forth above as if fully set forth herein.

329.   Vroom had a duty by its relationship with Powell and by contract to perform obligations to Powell with the degree of skill possessed by those of ordinary skill in its particular trade.

330.   At the times set forth hereinabove, through poor performance, Vroom negligently, grossly negligently and/or wantonly sold the Jeep to Powell without good title, and financed the Jeep without good title, which has caused Powell to sustain severe injuries and damages to his property as set forth hereinabove.

331.   Vroom's performance in selling and financing the Jeep to Powell also constitutes negligence *per se* because Vroom sold the Jeep using fraudulent and

deceptive trade practices, failed to have good title as required by Alabama law and failed to properly procure Powell's Alabama license and registration for the Jeep, all amounting to a failure to meet applicable industry standards, as well as applicable state and federal law codes, causing Powell to sustain severe injuries and damages as set forth hereinabove.

332.   Vroom had a duty to select and supervise its agents and/or employees in performing its obligations to Powell to delivery the Jeep with good title and to provide good title for the Jeep.

333.   At the times set forth hereinabove, Vroom negligently, grossly negligently, and wantonly selected and supervised its agents and/or employee workers who were involved with procuring and delivering the Jeep's title to Powell, and causing Powell to sustain severe injuries and damages as set forth hereinabove.

334.   Under the terms of the RISC assigned to Ally and pursuant to the "Holder Rule" 16 C.F.R. 433.2 and its Alabama state analog, Ala. Code § 7-3-302, Ally is liable for Vroom's negligent, grossly negligent and wanton conduct.

335.   Ally is also responsible for its own negligent, grossly negligent and/or wanton misconduct alleged herein.  Ally had a duty by its relationship with Powell and by contract to perform obligations to Powell with the degree of skill possessed by those of ordinary skill in its particular trade.

336.   At the times set forth hereinabove, through poor performance, Ally

negligently, grossly negligently and/or wantonly aided and abetted Vroom in its sale of the Jeep to Powell without good title, which has caused Powell to sustain severe injuries and damages to his property as set forth hereinabove.

337.   Ally has serviced and continues to service the RISC by soliciting and procuring payments from Powell without having proper title for the Jeep, which has caused Powell to sustain severe injuries and damages to his property as set forth hereinabove.

WHEREFORE, Powell demands judgment against Defendants, jointly and severally, for actual and punitive damages plus interest, all costs of this proceeding, and all other relief available under law.

## COUNT VII
## CIVIL CONSPIRACY

338.   Powell hereby incorporates the allegations set forth above as if fully set forth herein.

339.   Vroom and Ally acted in concert with each other to cause injury to Powell and commit breach of contract, breach of warranty, unfair and deceptive practices, fraud, negligence, gross negligence and wantonness, among other wrongful acts alleged herein.

340.   Vroom and Ally, through the words, conduct and agreement, conspired among themselves at various times to wrong, injure, damage, defraud and deceive Powell by: (1) advertising and selling the Jeep what was not owned by Vroom at the

time of sale to Powell; (2) preparing fraudulent documentation to support and underpin their illicit activities, with regard to both Powell's purchase of the Jeep; (3) fraudulently inducing Powell to execute the Retail Purchase Agreement and the RISC for the Jeep when Vroom did not have good time for the Jeep; (4) fraudulently misrepresenting the Jeep's odometer reading on the odometer disclosure statement; (5) fraudulently inducing Powell to pay $500 by credit card and $4,500 by interstate wire transfer for a down payment on the Jeep when Vroom did not have good time; (6) fraudulently inducing Powell to pay onerous fees, including title fees, for the Jeep when it did not have good title; (7) delivering the Jeep to Powell following sale without good title; (8) misrepresenting to Powell that the title issues for the Jeep were caused by "errors" of the previous owner rather than Vroom; (9) withholding the truth about the Jeep's title from Powell in an effort to fraudulently induce him to continue making payments pursuant to the RISC; and (10) other illicit, unlawful and wrongful activities alleged herein.

341.   Vroom and Ally have taken action and committed various acts in furtherance of their conspiracy that constitute the overall plan of illicit activity designed and in fact targeted to harm Powell.

342.   Through their conspiracy, Vroom and Ally, acting jointly and severally, caused Powell to suffer significant and continuous damages, injury and loss.

WHEREFORE, Powell demands judgment against Defendants, jointly and

severally, for actual and punitive damages plus interest, reasonable attorney's fees, all costs of this proceeding, and all other relief available under law.

## DEMAND FOR TRIAL BY JURY

Plaintiff Thomas L. Powell hereby demands trial by jury of all issues triable to a jury.

Dated:  March 8, 2022                              Respectfully submitted,

                                                   /s/Vincent J. Graffeo
                                                   Vincent J. Graffeo
                                                   Attorney for Plaintiff Thomas L. Powell
                                                   Graffeo Law, LLC
                                                   2119 3rd Ave. N., Suite 203
                                                   Birmingham, Alabama 35203
                                                   Telephone: (205) 994-8249
                                                   Email: vincent@graffeolaw.com

**OF COUNSEL:**
GRAFFEO LAW, LLC
2119 Third Avenue North, Suite 203
Birmingham, AL 35203
205-994-8249 (main)
205-994-8215 (fax)
vincent@graffeolaw.com
***Counsel for Plaintiff Thomas L. Powell***

## PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL

Vroom, Inc.
c/o Paul J. Hennessy, Registered Agent
1375 Broadway, Floor 11
New York, New York 10018

Vroom Automotive, LLC
c/o Corporation Service Co, Registered Agent
211 E. 7th Street, Ste. 620
Austin, TX  78701

Ally Financial Inc.
c/o C T Corporation System
2 North Jackson St., Ste. 605
Montgomery, AL  36104

Ally Bank
c/o CT Corporation System
2 North Jackson St., Ste. 605
Montgomery, AL  36104