# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **THOMAS L. POWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  2:22-cv-00302-JHE** |
| | ) | |
| **VROOM, INC.; VROOM** | ) | |
| **AUTOMOTIVE, LLC; ALLY** | ) | |
| **FINANCIAL, INC. and ALLY BANK,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## THOMAS L. POWELL'S OPPOSITION TO VROOM, INC.'S AND VROOM AUTOMOTIVE, LLC'S MOTION TO STAY CASE AND COMPEL ARBITRATION

Plaintiff Thomas L. Powell ("Powell") respectfully submits this Opposition to Defendants Vroom, Inc.'s and Vroom Automotive, LLC's (collectively, "Vroom") Motion to Stay Case and Compel Arbitration [Doc. 16].  Vroom's Motion is due to DENIED.  In support of this Opposition, Powell states as follows:

## I.    INTRODUCTION

This Court should deny Vroom's Motion to Stay Case and Compel Arbitration for three reasons.  First, Vroom did not own the 2017 Jeep Wrangler (the "Jeep") when it sold it to Powell.  As a result, Vroom had no right to convey title or enter a dispute resolution concerning the Jeep when Vroom accepted Powell's $5,000 down payment and obtained his signature.  Therefore, Vroom procured the arbitration

provisions through fraudulent inducement and they are void due to lack of mutual assent.  Second, Powell's Magnuson-Moss Warranty Act ("MMWA") claims are not subject to binding arbitration by Vroom's express exclusion in the Retail Purchase Agreement arbitration provision.  Third, even if the arbitration provisions were valid and binding, the Court should decline enforcement due to unconscionability.

## II.    UNDISPUTED FACTS RELEVANT TO VROOM'S MOTION

On May 13, Powell located a 2017 Jeep Wrangler (the "Jeep") that was advertised for sale by Vroom on www.vroom.com.  (Complaint at 10, ¶ 28, Doc. 1; Declaration of Thomas L. Powell ("Powell Declaration") at 2, ¶ 5, attached hereto as Exhibit A).  Vroom represented that its inventory of cars for sale was part of a "stringent selection process" and that "[w]e only sell cars and trucks with clean title…"  (Complaint at 11, ¶ 31, Doc. 1; Powell Declaration at 3, ¶ 9).  Powell completed his financing application and purchase online the same day.  (Complaint at 11-12, ¶¶ 33; Powell Declaration at 5, ¶ 16).  As part of the purchase process, Vroom emailed Powell a DocuSign envelope containing approximately 46 pages of preprinted documents including, but not limited to the Vroom Retail Purchase Agreement (the "Retail Purchase Agreement"), Motor Vehicle Retail Installment Sales Contract (the "RISC"), an Agreement to Furnish Insurance Policy, the Buyers Guide – Dealer Warranty, an odometer disclosure statement of 16,972 miles, the Limited Warranty with Roadside Assistance, the Roadside Assistance Limited

Agreement & Membership Application, an Application for Texas Title and/or Registration, a Texas Application for Title Only, a Texas County of Title Insurance, a delivery fee, a Power of Attorney, a Texas Dealer's Reassignment of Title for a Motor Vehicle, a Guaranteed Asset Protection Deficiency Waiver Addendum, a Credit Application, a Credit Score.   (Complaint at 12, ¶ 35, Doc. 1; Powell Declaration at 4, ¶ 11, Exhibit A.1).

Vroom prepared the documents and provided them to Powell without explanation of their meaning or implications. (Powell Declaration at 5, ¶ 13).  Powell was not provided with an opportunity to negotiate any of the listed terms and was required to sign the documents and submit a down payment for the Jeep. *Id.*  The total vehicle purchase price was $40,316.28.  (Complaint at 11, ¶ 33, Doc. 1; Powell Declaration at 5, ¶ 16).   On May 13, 2021, Powell signed the documents contained in the DocuSign envelope, made a $500.00 credit card payment and issued a $4,500.00 wire for a total $5,000.00 down payment to Vroom for the Jeep. (Complaint at 14-15, ¶ 45, Doc. 1; Powell Declaration at 5, ¶ 14).

In late May 2021, Vroom delivered the Jeep to Powell.  (Complaint at 19, ¶ 73, Doc. 1; Powell Declaration at 6, ¶ 19). Vroom did not provide Powell with a temporary license registration tag, an application for certificate of title or the then-current certificate of title. (Complaint at 19, ¶ 74, Doc. 1; Powel Declaration at 6, ¶ 19).  Between June and December 2021, Vroom sent Powell approximately five

separate temporary tags.  (Complaint at 31, ¶ 126; Powell Declaration at 8, ¶ 26).

Powell contacted Vroom and Ally numerous times during this period to inquire as

to the status of the title so he could license and register the vehicle in Alabama.

(Complaint at 31, ¶ 125, Doc. 1; Powell Declaration at 6, ¶ 20).  Powell's fifth

temporary tag expired in December 2021 and Vroom ceased responding to his

communication.  (Complaint at 32, ¶ 130-131, Doc. 1; Powell Declaration at 8, ¶

26).

On February 25, 2022, over more than nine months after purchasing the Jeep,

Powell was finally able to obtain an Alabama license and registration for the Jeep.

(Complaint at 35, ¶ 150, Doc. 1; Powell Declaration at 10, ¶ 33).   In connection with

Powell's Alabama Application for Certificate of Title, Vroom provided the Alabama

MVD with an undated "Affidavit of Corrections" signed by Vroom Title and

Registration Specialist Adrianne Granger, which reads as follows:

> This letter is to address the date on the back of the title. Vroom
> purchased the vehicle on 5/17/21. Once pay off was received, the bank
> released the electronic title to Vroom. The title issued date reads
> 07/14/21 because this is the day that the title was printed after the lien
> had been released.

(Complaint at 37-37, ¶ 158, Doc. 1; Vroom Affidavit of Corrections, Exhibit A.8 at

7[1]).  By Vroom's own admission to the State of Alabama MVD, Vroom did not even

---

[1] The Powell Declaration contains a copy of Alabama Department of Revenue Motor Vehicle
Division's Certified Record Response for the Jeep's title history is attached as Exhibit A.8.

own the Jeep at the time Vroom solicited Powell's signature on the Retail Purchase Agreement.   Powell learned from his pre-printed Alabama Application for Certificate of Title that Vroom did not obtain title in Texas to Jeep until January 15, 2022, which evidences that Vroom did not have good title for the Jeep in its possession when delivered to Powell in May 2012 as required by law.  (Complaint at 35, ¶ 151, Doc. 1; Powell Declaration at 10, ¶ 35, Exhibit A.8 at 2).

Powell would never have paid a $5,000 down payment and signed the Retail Purchase Agreement or the RISC with arbitration provisions had he known that Vroom did not own the Jeep and did not have the Jeep's certificate of title in its possession on May 13, 2021 when Vroom sold it to him.  (Powell Declaration at 11-12, ¶¶ 41-42).

## III.   ARGUMENT

### A.   The arbitration provisions are void because Vroom procured them through fraud and did not properly transfer title

When Vroom sold the Jeep to Powell on May 13, 2021, it did not own or possess good title to the Jeep.  Vroom admits in an affidavit submitted to Alabama MVD that Vroom did not purchase the Jeep until May 17, 2021 and did not acquire a title (albeit an improper one) until July 14, 2021, well after Vroom Delivered the Jeep to Powell.  *See* Exhibit A.8.  Vroom's fraudulent representations prevent enforcement of its arbitration provisions.  Under these set of facts, Vroom had no authority to contract for the sale of the Jeep to Powell and enter dispute resolution

agreements. Vroom's failures to comply with Alabama's and Texas's laws concerning certificate of vehicle titles provide additional grounds to void the arbitration provisions. Thus, there was no meeting of the minds and no enforceable agreement to arbitrate.

### 1. Arbitration provisions procured through fraud or contained in a void contract are invalid

In its Motion, Vroom asks the Court to enforce the arbitration provisions found in Vroom's Retail Purchase Agreement and the RISC. The Federal Arbitration Act (FAA) provides that a court may compel arbitration only "upon being satisfied that the making of the agreement or the failure to comply therewith is not at issue." 9 U.S.C. § 4. The FAA policy in favor of enforcing arbitration clauses yields to state law in determining whether an agreement to arbitrate exists:

> Chapter 1 of the Federal Arbitration Act (FAA) permits courts to apply state-law doctrines related to the enforcement of arbitration agreements. Section 2 of that chapter provides that an arbitration agreement in writing "shall be ... enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As we have explained, this provision requires federal courts to "place [arbitration] agreements ' "upon the same footing as other contracts." ' " *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)). But it does not "alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009).

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643 (2020). *See also Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170 (11th Cir. 2011) ("[A]rbitration is a matter of contract [and] the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate.") (quoting *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004).

The FAA's savings clause (9 U.S.C. § 2) "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.' " *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). *See also Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) ("Arbitration provisions will be upheld as valid unless defeated by fraud, duress, unconscionability, or another 'generally applicable contract defense.'") (citing *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. at 63, 67–68 (2010)).

"State contract law determines the existence and contours of parties' agreements…" *Dasher v. RBC Bank (USA)*, 882 F.3d 1017, 1023 (11th Cir. 2018) (citing *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1127 (11th Cir. 2014)). *See also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("Thus, in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts."). In

reviewing arbitration provisions, Alabama law applies contract principles to determine first if there was a "meeting of the minds." *See, e.g., Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc.*, 745 So. 2d 271, 275 (Ala. 1999). Formation of a valid contract requires that the parties objectively express a mutual agreement as to the contract's material terms.

"To avoid arbitration, '[a] party must provide substantial evidence of fraud in the inducement, particularly related to the arbitration clause....'" *Massey Automotive, Inc. v. Norris*, 895 So. 2d 215, 218 (Ala. 2004) (invalidating arbitration clause due to buyer's reliance on dealer's representations) (quoting *Ex parte Perry*, 744 So. 2d 859, 863 (Ala. 1999) (opinion of three Justices)). No valid or enforceable arbitration agreement exists between Vroom and Powell because Vroom fraudulently induced Powell to execute the agreement based upon Vroom's representation that it owned the Jeep and had good title. In signing the Retail Purchase Agreement and RISC, Powell relied upon Vroom's representations that it owned and had good title to the Jeep. Unfortunately, because Vroom did not own the Jeep, it had no legal authority to enter contracts concerning the transfer of its title. Therefore, Vroom and Powell had no mutual assent to form a legally binding agreement to arbitrate.

"It is well settled in Alabama that where one purchases chattels from another not the legal owner thereof, such purchaser acquires no better title than his seller had although he purchases without notice of the infirmity, and for a valuable

8

consideration." *Moore v. Long*, 33 So. 2d 6, 7 (Ala. 1947).   Alabama's UCC reiterates this same principle:  "A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased."  At the execution of the Retail Sales Contract and RISC, because Vroom had no title to convey, Vroom could enter contracts concerning arbitration.

Under both Alabama and Texas law, a vehicle seller must at delivery provide the certificate of title to the purchase.  *See* Ala. Code § 32-8-44 ("If an owner transfers his interest in a vehicle, other than by the creation of a security interest, he shall, at the time of the delivery of the vehicle, execute an assignment and warranty of title to the transferee in the space provided therefor on the certificate or as the department prescribes, and cause the certificate and assignment to be mailed or delivered to the transferee or to the department."); Tex. Trans. Code § 501.0721 ("A person, whether acting for that person or another, who sells, trades, or otherwise transfers a used motor vehicle shall deliver to the purchaser at the time of delivery of the vehicle  a properly assigned title or other evidence of title as required under this chapter.").

Under Texas law, where Vroom is registered as a dealer, sales violating Texas's Certificate of Title Act like Vroom's Jeep sale to Powell are void:  "A sale made in violation of this chapter is void and title may not pass until the requirements

of this chapter are satisfied."  Tex. Trans. Code § 501.073.  In *Community Care of America of Alabama, Inc. v. Davis*, 850 So. 2d 283 (Ala. 2002), the Alabama Supreme Court refused to enforce an arbitration agreement because of the underlying agreement was voided by statute.  At the time, Ala. Code § 10-2B-15.02(a), declared all contracts void by foreign corporations who did not properly obtain a certificate of business registration from Alabama.[2]  *Id.* at 286.  In addition to Vroom's fraudulent representations, because Vroom did not comply with the applicable laws concerning certificate of title, its arbitration provision is void and this Court should not compel Powell to arbitration.

### 2.      Vroom's arbitration provisions lack mutual assent

Along with Vroom's fraudulent misrepresentation concerning its ownership of the Jeep, Vroom's  arbitration provisions lack mutual assent because they contain conflicting and contradictory terms.  Vroom seeks to compel arbitration under the terms of the Retail Purchase Agreement the terms of the RISC.

Vroom provided Powell with 46 pages of documents in connection with the Jeep sale.  Powell was required to review and sign the documents and complete his down payment within 24 hours to finalize his purchase of the Jeep.  Dispersed within the 46 DocuSign pages are four different arbitration provisions. The first version of

---

[2] A review of the Alabama Secretary of State's business entities page reveals that Vroom is not registered to do business in Alabama.

an arbitration provision is contained in the Vroom Retail Purchase Agreement. (Exhibit A.1 at 6-7).  The second version of an arbitration provision is contained in RISC.  (Exhibit A.1 at 13).  There is a third version of an arbitration provision contained in the Vroom Roadside Assistance Agreement.  (Exhibit A.1 at 26).  A fourth version of an arbitration provision is contained in the Vroom Guaranteed Asset Protection Deficiency Waiver Addendum (GAP Coverage).  (Exhibit A.1 at 41).  Finally, there is no arbitration provision in the Buyer Guide identifying the written limited warranty (*see* Exhibit A.1 at 16) and there is no arbitration provision in the Vroom 3-Month/6,000-Mile Limited Warranty (*see* Exhibit A.1 at 21). Vroom breached each of these agreements.

The terms contained in the four arbitration provisions are conflicting and contradictory. For example, the Retail Purchase Agreement arbitration provision provides that "in the event that you or Vroom are unable to resolve any dispute with one another, you and Vroom each agree to resolve any and all disputes and claims through binding arbitration."  (Exhibit A.1 at 6).   The Retail Purchase Agreement further states that "[d]isputes and claims are broadly construed to include past, current, and/or future claims seeking equitable and/or monetary relief that relate in any way to the Vehicle or Agreement, the relationship between you and Vroom..." *Id.*

11

In contrast, the RISC provides that "either you or we may choose to have any dispute between us decided by arbitration and not in court or by jury trial." (Exhibit A.1 at 7). The RISC states that "any claim or dispute, whether in contract, tort, statute, or otherwise, between you and us...which arises out of or relates to purchase or condition of this vehicle, this contract, or any resulting transaction or relationship shall, at your or our election, shall be resolved by neutral binding arbitration and not by a court action." *Id.* While the Retail Purchase Agreement and RISC each state they apply to any disputes or claims between Powell and Vroom related to the vehicle, the two arbitration provisions are starkly opposed on whether arbitration would be mandatory or elective.

Additionally, the Retail Purchase Agreement arbitration provision provide that arbitration will be administered by JAMS or the AAA (Exhibit A.1 at 7), while the RISC provides that a consumer can choose to have their claim arbitrated by either the AAA or any other organization subject to Vroom's approval (Exhibit A.1 at 13). The Retail Purchase Agreement arbitration provision provides that arbitration fees will be split (Exhibit A.1 at 7), while the RISC provides that Vroom will pay a consumer's arbitration fees up to $5,000 (Exhibit A.1 at 13). The two documents glaringly conflict with regards to the material terms related to arbitration.

The Retail Purchase Agreement and the RISC make up only two of the four total arbitration clauses present in the documents provided by Vroom to Powell. The

remaining two arbitration clauses also differ in their terms. The Vroom Roadside Assistance Limited Agreement provides for voluntary non-binding arbitration and equal cost-sharing and does not provide for a specific arbitrator. (Exhibit A.1 at 26). The GAP Coverage Addendum requires the consumer to initiate arbitration and proposes three possible arbitrators (with no reference to JAMS or AAA) and abide by the arbitrator's decision but does not provide for how fees and costs will be split. (Exhibit A.1 at 41). Notably, the Vroom Buyer Guide identifying the written limited warranty (Exhibit A.1 at 16) and the Vroom 3-Month/6,000 Mile Limited Warranty (Exhibit A.1 at 21) included in the 46 pages of documents do not contain any arbitration provision whatsoever. Vroom breached each of these agreements. Vroom deprived Powell of their benefits because Vroom did not own the Jeep when it sold it to Powell and Powell only received title (and a clouded title) over nine months after purchase, much longer than required by law.

"Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute that he has not agreed to submit." *A.G. Edwards & Sons, Inc. v. Clark*, 558 So. 2d 358, 362 (Ala. 1990) (refusing to compel defamation claim to arbitration because it was not in scope of agreement). Courts have refused to compel arbitration in situations involving contradictory arbitration agreements because there is no meeting of the minds. For example, in *Dreyfuss v. Etelecare Global Solutions-U.S. Inc.*, 349 Fed. Appx. 551, 553 (2d Cir. 2009), the Second

Circuit refused to compel arbitration when an employer could not demonstrate that the employee had agreed to any specific arbitration terms because the employer used multiple arbitration agreements and the employer could not show which applied to the employee. *See also Opals On Ice Lingerie v. Body Line Inc.*, 320 F.3d 362, 372 (2nd Cir. 2003) (finding a significant difference and "no meeting of the minds" when one party signed a document calling for arbitration in New York and the other signed a document calling for arbitration in California).

In its Motion, Vroom requests the Court to compel arbitration under the provisions contained in the Retail Purchase Agreement and strangely, the RISC, while ignoring the other two provisions.[3] Vroom assigned its rights under the RISC (including any right to arbitration) to Ally, who has not sought to compel arbitration. "A valid assignment gives the assignee the same rights, benefits, and remedies that

---

[3] In its affidavit, Vroom improperly incorrectly claims that Vroom, Inc. "has no nexus to the transaction at issue" and accordingly, "is not a proper party to this arbitration." Doc. 16-1 at 2. Vroom ignores its own arbitration provision in which it requested Powell to send any rejection notice directly to "Vroom, Inc." at its corporate headquarters in New York:

> (k) Requirements for opting out: In order to reject this provision, Vroom must receive a signed writing ("Rejection Notice") from you within 30 days of the day you enter into the Agreement stating that you reject the arbitration provision. The Rejection Notice must include your name, address, VIN of the Vehicle purchased, and date of the sale, and must be mailed to **Vroom, Inc., Attn: Legal Department, 1375 Broadway, 11th Floor, New York, New York 10018** via certified mail, return receipt requested. Rejecting the arbitration provision will not affect any other aspect of the Agreement.

Exhibit A.1 at 7 (emphasis added).  Vroom typically only uses the name "Vroom" on its contracts and vehicle titles, without distinguishing between "Vroom, Inc." and "Vroom Automotive, LLC."

the assignor possesses." *Nissan Motor Acceptance Corp. v. Ross*, 703 So. 2d 324, 326 (Ala. 1997). Ally submitted an Answer to Powell's Complaint and does not deny that the District Court is the proper jurisdiction and venue to resolve Powell's claims. *See* Doc. 18 at 1-2.

All of Vroom's arbitration clauses differ so significantly from each other regarding essential terms – whether arbitration is voluntary or mandatory, who will arbitrate the claim, how the arbitrator is chosen, and how fees and costs will be attributed – that Powell and Vroom could not possibly have reached a "meeting of the minds" regarding an agreement to arbitrate. Tellingly, Vroom fails to make any declarations about which exact arbitration provision the Court should use and what material terms to apply to this dispute. Accordingly, there was no formation of a valid and binding arbitration agreement making arbitration unenforceable.

## B. Powell's MMWA claims are not arbitrable

Powell alleges claims against Vroom under the MMWA in Count III of the Complaint. (Doc. 1 at 52-58). Vroom's arbitration provision in the Retail Purchase Agreement expressly exempts from arbitration any MMWA claim:

> Further, a dispute or claim under this provision does not include any dispute or claim that, under the Magnuson-Moss Warranty Act, may not be the subject of a pre-dispute agreement to arbitrate.

(Exhibit A.1 at 6). In a footnote, Vroom tries to minimize the impact of the MMWA's exclusion from arbitration by claiming Powell's Complaint does not

allege a defect in the Jeep's performance.  *See* Doc. 16 at 6-7 n.1.  By not possessing and delivering title, Vroom breached its most basic of warranties – an express warranty of title and implied warranty of merchantability – made to Powell.

This Court has jurisdiction to decide claims brought under the MMWA (15 U.S.C. § 2301 et seq) by virtue of 15 U.S.C. § 2310(d).  The MMWA creates a federal cause of action for a consumer who is damaged by the failure of a supplier or warrantor to comply with a written warranty, an implied warranty, or a service contract. 15 U.S.C. § 2301(6) through (8).  The sale must involve a consumer product and the seller must be a supplier.

The MMWA requirements are met in the Jeep sale at issue in this case.  Powell is a consumer as defined in 15 U.S.C. § 2301(3), Vroom is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5), and the Jeep is a consumer product as defined in 15 U.S.C. § 2301(1).  Powell can recover against Vroom under the MMWA upon a showing that Vroom violated an express or implied warranty under Alabama law.  The Eleventh Circuit in *Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1298 (11th Cir. 1999) explained how a plaintiff can recover under the MMWA:

> The court turned to state law for the rule of decision because: (1) the Magnuson–Moss Act "is virtually silent as to the amount and type of damages" that may be awarded in a breach of warranty suit brought under the Act, (2) the Act neither invalidates nor restricts " 'any right or remedy of any consumer under State law' " (quoting 15 U.S.C. § 2311(b)(1)) and (3) "the legislative history clearly implies that a resort

> to state law is proper in determining the applicable measure of damages under the Act."

*Id.* at 1298 (quoting *MacKenzie v. Chrysler Corporation*, 607 F.2d 1162, 1166 (5th Cir. 1979).  For these reasons, Powell's Alabama state law warranty claims in Count II are also excluded from arbitration.

Powell has a cause of action under the MMWA because Vroom breached its written warranties, implied warranties, and contracts related to the Jeep. Under Vroom's own admission, binding arbitration is not permissible for Powell's MMWA claims.

### 1. The Jeep's defective title constitutes a breach of Vroom's written warranty under the MMWA

A written warranty under the MMWA must be either (1) a written affirmation of fact or promise that a product is defect free or will meet a specified level of performance over a specified period of time, or (2) a written undertaking to refund, repair, replace, or take other remedial action if the product fails to meet promised specifications.

The MMWA, in 15 U.S.C. § 2304(a)(1), requires Vroom, as warrantor, to remedy any defect, malfunction, or nonconformance of the subject vehicle within a reasonable time and without charge to Powell, as defined in 15 U.S.C. § 2304(d). Vroom provided a written warranty to Powell as defined in the MMWA.  Vroom's Retail Purchase Agreement expressly states, in bold and underlined terms, that "[w]e

agree to transfer to you, and you agree to accept, title and ownership of the Vehicle at Vroom's address given above." (Exhibit A.1 at 3). This statement is a written affirmation of fact that Vroom would transfer title to Powell and a promise that the vehicle was free of defective title. Later in the same agreement, Vroom asserts that "[w]hen Vroom transfers title and ownership of the Vehicle to you, you may have the Vehicle delivered to you anywhere in the lower 48 states, excluding Hawaii and Alaska." (Exhibit A.1 at 5). This statement serves as a reiteration of Vroom's promise that before the vehicle was to be delivered to Powell, Vroom would transfer valid title and ownership. In the same purchase agreement, Vroom writes that they may require certain documents "to facilitate transferring title and finalizing sale of the Vehicle." (Exhibit A.1 at 5). For a third time, Vroom confirms their promise to transfer title to Powell, to finalize the sale. In fact, Vroom charged Powell a "Title Fee" of $125.00, indicating that, in exchange for that fee, they would provide valid title for the vehicle. (Exhibit A.1 at 3).

Vroom failed to abide by their written promise to provide valid title and a vehicle lacking defect to Powell. The MMWA requires Vroom, as warrantor, to remedy defective title within a reasonable time and without charge to Powell. Vroom has repeatedly failed to do so. As such, Powell has a valid claim under the MMWA.

**2.      Vroom breached its implied warranty of merchantability under the MMWA**

The MMWA defines "implied warranty" as "an implied warranty arising under State law in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7).   Under Ala. Code § 7-2-314, unless otherwise excluded or modified, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  This means that the dealer promises the used car will be fit for ordinary driving purposes, reasonably safe, without major defects, and of the average quality of similar cars available for sale in the same price range.

Vroom improperly tried to evade the implied warranty of merchantability in its agreements with Powell in violation of the MMWA. The Act provides that "a warrantor may not impose any limitation on the duration of any implied warranty on the product." 15 U.S.C § 2304 (a)(2).   In the Retail Purchase Agreement Vroom states on the first page, in bold lettering, that

> Unless Buyer(s) ("you") receives a separate written 90-day limited warranty ("Limited Warranty") signed by Dealership ("Vroom", "Dealer", "we" or "us"), the above-referenced used vehicle ("Vehicle") is sold AS-IS and Vroom makes no express or implied warranties on the Vehicle, including the implied warranties of merchantability or fitness for a particular purpose, unless required by applicable law.

(Exhibit A.1 at 3).  Vroom repeats this assertion on the second page, writing "Vroom makes no other express or implied warranties on the Vehicle; and (c) there will be no implied warranties of merchantability or fitness for a particular purpose unless required by applicable law.  Vroom does not have to make any repairs on the Vehicle

except as required under a Limited Warranty and applicable state law." (Exhibit A.1 at 4).

Vroom's implied warranty of merchantability remains pursuant to the terms listed in Vroom's own contract. Because Vroom provided a separate 90-day limited warranty (Exhibit A.1 at 21), an implied warranty of merchantability applies to the sale of the Jeep and under the MMWA, the implied warranty of merchantability cannot be limited by Vroom. "Generally, a court should enforce an arbitration agreement according to its terms, and no exception exists for a cause of action founded on statutory rights." *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626–27 (1985)).

An implied warranty of merchantability assures that a product will work for the purpose for which it is intended and exists to protect consumers from purchasing defective or misrepresented items. In this case, Vroom's implied warranty of merchantability assured that Powell would receive title to the Jeep so that he could register it and use it for its intended purpose – transportation. Vroom breached that implied warranty when they repeatedly failed to provide Powell with valid title to the vehicle. Vroom's nonconformity with the contract description of the product – a properly titled vehicle – is a breach of the implied warranty of merchantability and is actionable as a MMWA violation.

Powell's claims against Vroom under the MMWA are not subject to binding arbitration pursuant to Vroom's own arbitration provision and the FTC's rules. 16 CFR §§ 700 through 703. Accordingly, Vroom's motion to stay and compel binding arbitration should be denied.

### 3. Vroom's informal dispute resolution procedure does not meet FTC standards

The MMWA, in 15 USC § 2310, provides for "informal dispute settlement procedures." Subsection (a)(1) states that "Congress hereby declares it to be its policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." 15 USC § 2310(a)(1). Subsection (a)(2) provides that "The [Federal Trade] Commission shall prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of this chapter applies." 15 USC § 2310(a)(2). The MMWA requires that any warrantor who wishes to enforce informal dispute settlement procedures must ensure that the procedure "meets the requirements of such rules." 15 USC § 2310(3)(b).

The FTC established the rules for "Informal Dispute Settlement Procedures" under the MMWA in Title 16, Chapter I, Subchapter G, Part 703 of the Code of Federal Regulations. 16 CFR § 703. In 16 CFR § 703.3, the FTC provides minimum requirements for any "informal dispute settlement procedure", which it refers to as

"the mechanism." 16 CFR § 703.3 subsection (a) of the rules requires that "[t]he Mechanism shall be funded and competently staffed at a level sufficient to ensure fair and expeditious resolution of all disputes, and shall not charge consumers any fee for use of the Mechanism." 16 CFR § 703.3(a), emphasis added.

Vroom's Retail Purchase Agreement, in section 15, requires that the consumer, Powell, share the administrator and arbitrator fees of the arbitration procedures and that the consumer bear the expense of its own attorneys, experts and witnesses.   (Exhibit A.1 at 6).   This blatantly violates the FTC minimum requirements, which state that consumers shall not be charged any fee for using an informal settlement dispute procedure, such as arbitration.  Additionally, FTC rules, under 16 CFR § 703.2, require that "[t]he warrantor shall disclose clearly and conspicuously at least the following information on the face of the written warranty:

(1)  A statement of the availability of the informal dispute settlement mechanism;

(2)  The name and address of the Mechanism, or the name and a telephone number of the Mechanism which consumers may use without charge;

(3)  A statement of any requirement that the consumer resort to the Mechanism before exercising rights or seeking remedies created by Title I of the Act; together with the disclosure that if a consumer chooses to seek redress by pursuing rights and remedies not created by Title I of the Act, resort to the Mechanism would not be required by any provision of the Act; and

(4)  A statement, if applicable, indicating where further information on the Mechanism can be found in materials accompanying the product, as provided in § 703.2(c) of this section.

16 CFR § 703.2(b).

Vroom failed to provide any of the above listed information about arbitration in any of its warranties, contracts, and agreements with Powell.  The limited warranty contains no arbitration provision whatsoever.  (Exhibit A.1 at 21).  The Retail Purchase Agreement provides only that "[t]he arbitration shall be administered by (i) JAMS, pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with its expedited procedures contained in those rules, or (ii) American Arbitration Association in accordance with its Consumer Arbitration Rules" and provides URL links for the AAA and JAMS rules.  (Exhibit A.1 at 7).  Vroom does not provide the phone number, or address of JAMS or the AAA, a statement that a consumer can contact them free of charge, their availability, or where any other information about their services can be found. This is in plain violation of the FTC's rules for informal settlement dispute procedures.

The FTC rules, under 16 CFR § 703.2, also require that "[t]he warrantor shall include in the written warranty or in a separate section of materials accompanying the product, the following information:

(1)   Either
    (i)   A form addressed to the Mechanism containing spaces requesting the information which the Mechanism may require for prompt resolution of warranty disputes; or
    (ii)   A telephone number of the Mechanism which consumers may use without charge; (2) The name and address of the Mechanism;
(2)   A brief description of Mechanism procedures;

(3)     The time limits adhered to by the Mechanism; and

(4)     The types of information which the Mechanism may require for prompt resolution of warranty disputes.

16 CFR § 703.2(c).

The MMWA provides that if a supplier, warrantor, or service contractor fails to establish an informal dispute settlement procedure which meets the requirements of the FTC's rules:

> a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief— (A) in any court of competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.

15 USC § 2310(d).

Vroom has failed to completely provide the required listed information above in all of its warranties, contracts, and agreements with Powell in plain violation of the rules established by the FTC.  Because Vroom has failed to follow the minimum requirements for informal dispute settlement procedure in accordance with the FTC requirements under 16 CFR § 703.3, the arbitration provisions are invalid and unenforceable.   Accordingly, the claims against Vroom under the MMWA are properly resolved in the United States District Court, and not via binding arbitration.

**C.     Vroom's arbitration provisions are unconscionable and must be voided**

The Federal Arbitration Act provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable," but courts may decline to enforce them when grounds "exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

While Alabama law will enforce properly drafted arbitration agreements, unconscionable arbitration clauses like those proffered by Defendant Vroom must be voided. For consumer credit transactions, "if the court as a matter of law finds the contract or any provision of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable provision, or it may so limit the application of any unconscionable provision as to avoid any unconscionable result." Ala. Code § 5-19-16.

In *American General Finance, Inc. v. Branch*, 793 So. 2d 738, 748 (Ala. 2000), the Alabama Supreme Court declared an arbitration agreement "unconscionable" under basic contract law due to terms so grossly favorable to a lender and the lack of meaningful choice to the consumer, despite the existence of strong federal and state policy favoring arbitration. The court analyzed several

factors, including "(1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided or patently unfair terms in the contract." *Id.* at 748 (quoting *Layne v. Garner*, 612 So. 2d 404, 408 (Ala. 1992).

Vroom's arbitration provisions with Powell reek of procedural and substantive unconscionability. The arbitration provisions contained in Vroom's sales agreements, warranties, and other documents are procedurally unconscionable because they constitute adhesion contracts. Vroom's sales representative emailed Powell a DocuSign envelope containing 46 pages of preprinted documents. (Exhibit A.1). On page 1 of the documents contained in the 46-page DocuSign envelope, in bold, Vroom advised Powell "[y]ou have 24 hours to sign your documents & complete any applicable payment or the DocuSign may be voided and the hold on your vehicle released." (Exhibit A.1 at 1). Powell was required to sign the documents to purchase the vehicle on a "take it or leave it" basis and he was not provided an opportunity to negotiate any of the terms of the agreements. Thus, there was "no true equality of bargaining power" between Powell and Vroom, rending the arbitration provision oppressive and procedurally unconscionable.

Vroom's arbitration provisions are also substantively unconscionable. Allowing a party to enforce an arbitration provision when it does not even have an

interest in the subject matter of the contract amounts to contractual terms that are unreasonably favorable to one party and shocks the conscious.  Enforcing arbitration provisions in this situation would allow for arbitration to apply in an unusually broad scope and in a one-sided and patently unfair manner.  Allowing a dealer to enforce arbitration provisions like Vroom seeks to do here is oppressive towards consumers and would provide a judicial ratification of Vroom's abusive practices of enticing customers to execute arbitration provisions procured in vehicle sale contracts for vehicles not even owned by Vroom.

Not only would enforcement of Vroom's arbitration provisions encourage Vroom to continue its practice of selling vehicles it does not own, but the provisions also have onerous requirements on Powell. Powell faces risk of paying the costs of private arbitration when he would otherwise be entitled to a public and almost free judicial forum for his claims.  Both JAMS and the AAA require fees for filing, management and hearing.  The Retail Purchase Agreement arbitration provision states that "you and Vroom will bear the administrator and arbitrator fees that each party is normally required to pay under the rules and law applicable to the proceeding." (Exhibit A.1 at 7). The RISC provides that Vroom would only pay up to a maximum of $5,000 in arbitration costs.  (Exhibit A.1 at 13).

The United States Supreme Court has recognized that "the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal

statutory rights in the arbitral forum." *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 90 (2000).   Requiring Powell to pay fees and costs associated with arbitration will impose a financial burden to vindicating his claims, as evidenced by his declaration.   Powell Declaration at 13, ¶ 51. Vroom's arbitration provisions contain further unconscionable terms such as waiving attorney's fees, limiting damages, and eliminating Powell's right to a jury trial and class action litigation. Because these provisions severely impair Powell's substantive rights, Vroom's arbitration provisions should be deemed unconscionable and void.

## IV.   **CONCLUSION**

For all the foregoing reasons, the Court should deny Vroom's Motion to Stay Case and Compel Arbitration.

Dated:  May 2, 2022                                              Respectfully submitted,

                                                                              /*s/Vincent J. Graffeo*
                                                                              Vincent J. Graffeo
                                                                              Attorney   for   Plaintiff   Thomas   L. Powell
                                                                              Graffeo Law, LLC
                                                                              2119 3rd Ave. N., Suite 203
                                                                              Birmingham, Alabama 35203
                                                                              Telephone: (205) 994-8249
                                                                              Email: vincent@graffeolaw.com

**OF COUNSEL:**
GRAFFEO LAW, LLC
2119 Third Avenue North, Suite 203
Birmingham, AL 35203
205-994-8249 (main)

205-994-8215 (fax)
vincent@graffeolaw.com
**Counsel for Plaintiff Thomas L. Powell**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing document electronically filed with the Clerk of Court using the CM/ECF system on this the 2nd day of May, 2022:

George C. Gaston, ESQ.
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
63 So. Royal Street, Suite 302
Mobile, AL  36602
251-438-7850 (telephone)
251-438-7875 (fax)
ggaston@gallowaylawfirm.com
*Attorney for Defendants Vroom, Inc. and Vroom Automotive, LLC*

Gregory M. Taube, Esq.
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street, NW, Suite 1700
Atlanta, GA  30363
404-322-6000 (telephone)
404-322-6050 (fax)
greg.taube@nelsonmullins.com
*Attorney for Ally Financial, Inc. and Ally Bank*

*/s/Vincent J. Graffeo*