UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS L. POWELL, } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:22-CV-302-RDP |
| } | |
| VROOM, INC., et al., } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This case is before the court on Vroom, Inc. and Vroom Automotive, LLC's (collectively "Vroom" or "Defendant") Motion to Stay Case and Compel Arbitration. (Doc. # 16). This Motion (Doc. # 16) has been fully briefed (Docs. # 16, 23, 26, 34) and is ripe for review. After careful consideration, the court concludes that Vroom's Motion is due to be granted.

**I.     Background**

This action stems from Vroom's allegedly unlawful sale of a vehicle to Plaintiff Thomas Powell. Plaintiff has specifically alleged that Vroom knowingly did not have good title to the 2017 Jeep Wrangler when it sold the vehicle to him on May 13, 2021. (Doc. # 1 at 3). Plaintiff further alleges facts about how difficulties in obtaining the title continued after Vroom delivered the Jeep. (*Id.* at 33, 35). To purchase the Jeep, Plaintiff paid a $5,000 down payment and secured a loan through Vroom for the remainder of the purchase price (which Vroom ultimately assigned to Defendant Ally Financial, Inc. and/or Ally Bank).

In connection with the sale of the Jeep, Plaintiff executed a variety of contracts, including the Retail Purchase Agreement, Motor Vehicle Retail Installment Sales Contract ("RISC"), Vroom Roadside Assistance Limited Agreement, and Vroom Guaranteed Asset Protection Deficiency Waiver Addendum ("GAP Coverage"). (Doc. # 23 at 11). The Complaint has asserted violations

of each contract other than the Vroom Roadside Assistance Limited Agreement, although the majority of the assertions are premised on alleged breaches of the Purchase Agreement and RISC. (Doc. # 1 at p. 59-60, 192, 314) (alleging violations of the GAP Coverage contract). Of particular relevance to this motion is that the three pertinent contracts – the Purchase Agreement, RISC, and GAP Coverage contract – each contain arbitration provisions. Those arbitration provisions provide, in relevant part:

> **Retail Purchase Agreement**
>
> 15. Arbitration and Class Action Waiver (PLEASE READ THIS CAREFULLY AS IT AFFECTS YOUR RIGHTS)
>
> (a) …. [I]n the event that you and Vroom are unable to resolve any dispute with one another, you and Vroom each agree to resolve any and all disputes and claims through binding arbitration, unless you expressly reject this arbitration in writing within 30 days in accordance with subsection (k) below.
>
> (b) "Disputes and claims" shall be broadly construed to include past, current, and/or future claims seeking equitable and/or monetary relief that relate in any way to the Vehicle, the Agreement, services and goods provided in connection with the Vehicle or Agreement, the relationship between you and Vroom, your credit application, your financing application, financing terms, your personal information, tort claims, and/or advertising claims. However, a dispute or claim does not include any self-help remedy or an individual action in court that is limited to preventing a party from using such self-help remedy and does not involve a request for damages or monetary relief of any kind. Further a dispute or claim under this provision does not include any dispute or claim that, under the Magnuson-Moss Warranty Act, may not be the subject of a pre-dispute agreement to arbitrate.
>
> (j) In the event of a conflict between this arbitration provision and the applicable rules or other provisions of the Agreement, or any other agreement between us, this arbitration provision will govern. However, in the event this arbitration provision conflicts with an arbitration provision in the RISC (where applicable), the provision in your RISC is controlling.

(Doc. # 23-1 at 21-22).

**Motor Vehicle Retail Installment Sales Contract**

ARBITRATION PROVISION

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the

>claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall; at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(Doc. # 23-1 at 28).

**GAP Coverage**

>You agree that all individual claims or disputes arising from or relating to this Addendum, whether in contract, tort, pursuant to statute, regulation, ordinance, or in equity or otherwise and whether Your dispute is with Administrator, Assignee, Dealer or any of their respective insurers, will be settled by impartial arbitration. To initiate arbitration, You must notify Administrator in writing of your desire to submit your issue to arbitration. You are responsible for providing Administrator with at least three proposed arbitrators. Administrator has the right to question the proposed arbitrators to confirm neutrality and select any of the three to act as the Arbitrator. If Administrator demonstrates that none of the three proposed arbitrators are neutral, You may be asked to proffer additional arbitrators until one is selected. The Arbitrator is responsible for setting the ground rules and procedures for the arbitration. You agree to abide by the arbitrator's decision.

(Doc. # 23-1 at 56).

On March 8, 2022, Plaintiff filed this action against Vroom and Defendant Ally. In his complaint, Plaintiff asserted the following claims: (1) breach of contract; (2) breach of express and implied warranties; (3) violation of the Magnuson Moss Warranty Act; (4) violation of the Alabama Deceptive Trade Practices Act; (5) fraudulent inducement and suppression; (6) negligence, gross negligence, and/or wantonness; and (7) civil conspiracy. (Doc. # 1). Vroom now moves to stay this action and compel arbitration. (Doc. # 16).

**II.     Standard of Review**

In deciding a motion to compel arbitration, courts determine only whether the parties agreed to arbitrate and, if so, whether their agreement encompasses the asserted claims. *See Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). If both conditions are met, courts must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By

3

its terms, the Act leaves no place for the exercise of discretion by a district court . . ."); *John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) (internal citation omitted) ("Under the FAA, a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute."); 9 U.S.C. § 3. If the court determines the plaintiff agreed to arbitrate her asserted claims, the court must either dismiss or stay the action pending arbitration. *Lambert*, 544 F.3d at 1195.

The court's ruling is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate," and the standard of review is analogous to a summary judgment motion. *In re Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (internal quotation marks omitted). Accordingly, the movant must establish "that there is no genuine dispute as to any material fact," under Rule 56(a), on the question of whether the parties agreed to arbitrate. A fact is material "if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). A genuine dispute as to a material fact exists where "the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." W*addell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

**III.    Analysis**

Under the Federal Arbitration Act ("FAA"), a written arbitration provision in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "reflect[s] both a liberal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S.Ct. 1740 (2011) (citation and quotations omitted). The FAA "was designed to promote" a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural

policies to the contrary." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011). The preference for arbitration is so strong that any doubts concerning the arbitrability of a dispute must be resolved in favor of arbitration. *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 (11th Cir. 2011) (internal citation omitted); *see also Picard v. Credit Sols., Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009) (recognizing that courts should "rigorously enforce arbitration agreements") (internal quotation marks omitted)).

It is well established in this Circuit that courts are governed by the following key inquiry when analyzing a motion to compel arbitration: whether a binding arbitration agreement arose between the parties under both federal and state law that covers the disputed claims. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) (noting that the federal policy favoring arbitration is taken into consideration even in applying ordinary state law). If such an agreement arose, the Federal Arbitration Act ("FAA") directs a court to enter an Order to compel arbitration and dismiss (or, alternatively, stay) all further proceedings in the action until arbitration has been completed. 9 U.S.C. §§ 3, 4.

The Supreme Court and the Eleventh Circuit have recognized that "parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1295 (11th Cir. 2022). Indeed, an agreement to arbitrate these gateway issues -- a so-called "delegation provision" -- "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Waffle House*, 866 F.3d at 1264 (internal citation omitted); *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir.

5

2015). "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920 (1995) (citing *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418 (1986) (finding that parties may agree to arbitrate arbitrability)); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1289 (11th Cir. 2022).

When an arbitration agreement contains a delegation provision, "courts only retain jurisdiction to review a challenge to that specific provision." *Parnell*, 804 F.3d 1142, 1144 (11th Cir. 2015). "Only if [a court] determine[s] that the delegation clause is itself invalid or unenforceable may [it] review the enforceability of the arbitration agreement as a whole." *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1335 (11th Cir. 2016). Absent a challenge to the delegation provision itself, federal courts must treat the delegation provision "as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center*, 561 U.S. at 72, 130 S.Ct. at 2779. When analyzing whether the parties to a contract have agreed to arbitrate threshold questions of arbitrability, courts "reverse[]" the FAA's standard "presumption" favoring arbitration. *Attix*, 35 F.4th at 1295 (quoting *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018)). However, as the Supreme Court explained in *Kaplan*, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." 514 U.S. at 944, 115 S.Ct. at 1924 (internal quotation marks omitted). If a court finds that the parties have clearly and unmistakably agreed to delegate questions of arbitrability to an arbitrator, it must respect the parties' decision as embodied in the contract. *Attix*, 35 F.4th at 1296 (internal citations and quotations omitted).

When federal courts interpret arbitration agreements, state contract law governs and directs the analysis of whether the parties committed an issue to arbitration. *Parnell*, 804 F.3d at 1147 (citing *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 1924 (1995)). *See also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("Thus, in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts."). Under Alabama law, a binding agreement is formed when there is an offer and acceptance, consideration, and "*mutual assent* to terms essential to the formation of a contract." *Southern Energy Homes, Inc. v. Hennis*, 776 So.2d 105, 108 (Ala. 2000) (emphasis in original) (quoting *Ex parte Grant*, 711 So.2d 464, 465 (Ala. 1997).

So, as this review of relevant case law shows, the court's role with respect to arbitrability is narrow. The court must first assess whether the parties clearly and unmistakably agreed to delegate questions of arbitrability to an arbitrator. Next, the court will consider whether Plaintiff has specifically challenged the validity and/or enforceability of the parties' delegation agreement. Finally, the court asks whether the movant waived its right to elect arbitration.

### A. The Parties Clearly and Unmistakably Agreed to Delegate Questions to an Arbitrator.

The RISC agreement contains a delegation provision. That provision contains, in relevant part:

> Any claim or dispute, whether in contract, tort, statute or otherwise (<u>including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute</u>) . . . which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship. . . shall . . . be resolved by neutral, binding arbitration and not by a court action.

(Doc. # 23-1 at 28).

The terms of the RISC make clear that the parties agreed to submit to the arbitrator the question of arbitrability of Plaintiff's present claims – all of which arise out of or relate to his purchase of the Jeep and the relevant financing terms set forth in the RISC. *Attix*, 35 F.4th at 1301-02.[1]

Of course, Plaintiff's claims arise from the alleged violations of two other contracts that contain arbitration provisions but do not have delegation provisions. When multiple governing arbitration provisions exists, courts must first address whether any inconsistencies across the arbitration provisions exist and, if so, whether such inconsistencies indicate that the parties failed to have a meeting of the minds with respect to arbitration. *Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016). However, this type of analysis would require the court to weigh in on the validity of the arbitration agreements themselves – a task that is "off limits" until it determines whether the parties clearly and unmistakably agreed to arbitrate questions of arbitrability. Thus, the court must assess whether inconsistencies exist across the three arbitration provisions with respect to who decides issues of arbitrability.

The RISC (but not the Purchase Agreement and GAP Coverage contract) expressly provides who decides issues of arbitrability. Although the Purchase Agreement does not contain a delegation provision, the Purchase Agreement makes clear that cases arising from the purchase and financing of the vehicle are subject to arbitration, just as the RISC's arbitration language provides. In other words, both arbitration provisions reserve to an arbitrator Plaintiff's present claims related to the allegedly fraudulent sale of the Jeep. *Compare* Purchase Agreement (reserving for an arbitrator claims "seeking equitable and/or monetary relief that relate in any way

---

[1] In *Attix*, the Eleventh Circuit notes that while partial delegation provisions are theoretically possible, the court has not yet encountered one "in the wild." Similarly, here, the language employed in the RISC agreement clearly suggests a complete delegation of arbitrability applying to all of Plaintiff's present claims.

to the Vehicle, the Agreement, services [] provided in connection with the Vehicle or Agreement . . . your financing application, financing terms . . .") *with* RISC (reserving for an arbitrator a claim that "arises out of or relates to your credit application, purchase [] of this vehicle, this contract or any resulting transaction or relationship . . .").

There are, however, some differences. For example, the Purchase Agreement provides for mandatory election while the RISC provides for elective arbitration where either party "may choose to have any dispute . . . decided by arbitration." (Doc. # 23-1 at 21-22, 28). The entity designated to arbitrate the matter also differs; the Purchase Agreement provides that JAMS or the American Arbitration Association ("AAA") will administer arbitration while the RISC providing that the consumer can choose either the AAA or any other organization subject to Vroom's approval. The provisions also differ in terms of how fees will be split.

These differences do not automatically mean that the parties did not agree to submit questions of arbitrability in this case to an arbitrator. Courts have granted motions to compel despite the existence of conflicting arbitration provisions when the contracts themselves provide the solution. *Ex parte Palm Harbor Homes, Inc.*, 798 So. 2d 656, 660 (Ala. 2001) (compelling the action to mediation where one of several arbitration provisions stated that "the terms of the arbitration provision in [that instrument]" superseded the other arbitration provisions). *But see Ragab*, 841 F.3d at 1138 (Tenth Circuit declining to "arbitrarily pick one [arbitration provision] to enforce" where "no language in the six agreements [] suggests one contract overrides the others . . .").

Here, the Purchase Agreement itself envisioned the possibility of differences between its terms and those contained in the RISC and provided that the RISC would control in that instance. (Doc. # 16-2). For example, to the extent that the Purchase Agreement's clause providing that

9

JAMS or the AAA will administer contradicts with the RISC's provision provisions that the AAA or any other organization that Vroom approves will administer arbitration, the RISC provision prevails.[2] And when parties incorporate the rules of the AAA into their agreement, "they clearly and unmistakably agree that the arbitrator should decide whether the arbitration clause applies." *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (alterations and internal quotation marks omitted) (quoting *Terminix Int'l Co., L.P. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2014)). *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.")

Other than the delegation provision, there are no material differences between requirements of the Purchase Agreement and of the RISC. Both agreements clearly evidence that Plaintiff agreed to arbitrate this present action. The RISC simply goes a step further and provides for the parties' agreement to arbitrate questions of arbitrability. The arbitration provision contained in the GAP Coverage contract is more limited in scope. Rather than broadly construing the matters subject to arbitration, the GAP Coverage contract provides that only matters "arising from or relating to this Addendum" are reserved for an arbitrator.

Of course, this raises the question: what constitutes a matter of "arbitrability?" As the Eleventh Circuit has determined, arbitrability questions include questions about the "'validity' or 'enforceability' of an arbitration agreement—i.e., whether the parties have entered into a legally operative arbitration agreement that is enforceable under law." *Attix*, 35 F.4th at 1299. *See Parnell*, 804 F.3d at 1146 (internal citation omitted) ("[P]arties may agree to commit even threshold

---

[2] Plaintiff repeatedly points to supposedly irreconcilable conflicts between the Purchase Agreement and the RISC, but fails to acknowledge Section 15(j) of the Purchase Agreement, which preemptively reconciles any conflict.

determinations to an arbitrator, such as whether an arbitration agreement is enforceable."). Indeed, Black's Law Dictionary similarly notes that the definition of "arbitrability" encompasses "whether the parties entered into an enforceable agreement to arbitrate." Black's Law Dictionary (11th ed. 2019).

Plaintiff argues that he did not agree to this provision and that the entire RISC was invalid due to fraud and unenforceable due to unconscionability. But these are precisely the issues that are reserved for the arbitrator.[3] *See Attix*, 35 F.4th at 1303 (citation omitted) ("[U]nder the delegation agreement, challenges to the primary arbitration agreement's validity or enforceability are off-limits to the courts . . ."). Accordingly, the questions of whether the Purchase Agreement and RISC are valid and enforceable are reserved for the arbitrator pursuant to the parties' agreement. Enforcing the delegation provision in the RISC does not violate the arbitration provisions of the Purchase Agreement or GAP Coverage contract. As such, the court is left to decide only whether Plaintiff has specifically challenged the delegation provision and whether Defendant waived its right to enforce the arbitration provision.

### B. Plaintiff Has Not Specifically Challenged the Delegation Provision.

Because the parties clearly and unmistakably agreed to the above delegation provision, the court only retains jurisdiction to review a challenge to that particular provision. However, in the absence of a direct challenge to the delegation provision, the court must treat the delegation provision as valid. Here, Plaintiff challenges only the enforceability of the arbitration agreements generally and does so primarily by challenging the contracts' validity. Plaintiff fails to address the

---

[3] Indeed, all of the arguments on which Plaintiff relies to contend that arbitration is not the proper forum constitute "gateway questions of arbitrability." *See* Rent-A-Center, 561 U.S. at 68–69, 130 S.Ct. 2772. Plaintiff argues that arbitration is not the proper forum for three primary reasons: (1) the arbitration agreements are void due to fraudulent inducement and lack of mutual assent; (2) the Magnuson-Moss Warranty Act claims are not subject to arbitration; and (3) the agreements are unenforceable due to unconscionability. (Doc. # 23 at 1-2).

11

delegation provision at all despite Defendant including the full text in its motion. (Doc. # 16 at 3). Where, as here, there is no direct challenge, the court must treat the delegation provision as valid and allow the arbitrator to determine the issue of arbitrability. *Rent–A–Center*, 561 U.S. at 72, 130 S.Ct. at 2779.

### C. Defendant Did Not Waive its Right to Enforce the Arbitration Provision

Plaintiff further argues that the court should determine the arbitrability of Powell's claims because Vroom waived any elective right to enforce the RISC's arbitration delegation provision. (Doc. # 43 at 3). This argument is without merit.

Plaintiff cites *Morgan v. Sundance*, 142 S. Ct. 1708 (2022) to support his contention that Defendant has acted inconsistently with its right to compel arbitration. In *Sundance*, the Supreme Court addressed a narrow question: whether the lower court properly considered prejudice to the opposing party when determining whether a party had waived its right to arbitrate. *Sundance*, 142 S. Ct., at 1712-13. The Court unanimously determined that the lower court erred in doing so, and noted that courts are not permitted to create "bespoke rule[s] of waiver for arbitration." *Id*. at 1713. The connection between *Sundance* and Plaintiff's argument is tenuous at best. Of course, it is true that this court cannot create waiver rules out of whole cloth. But the question here is whether Defendant's behavior has constituted waiver of its right to arbitrate.

In the closing paragraphs of his argument, Plaintiff points to two examples of Defendant's behavior that he contends show Defendant "knowingly relinquished" any right to arbitrate the question arbitrability of the Plaintiff's claims. (Doc. #43 at 4). First, Plaintiff suggests that Defendant "has not made any showing that it has ever elected to use the…arbitrability delegation's provision." (*Id.*) Second, Plaintiff argues that Defendant's initial motion to compel arbitration makes no argument that only an arbitrator can determine arbitrability, but instead raises this

threshold question to the court. (*Id*. at 4-5). Neither example provided by Plaintiff supports his contention that Defendant knowingly relinquished its right to compel arbitration.

First, Plaintiff claims that Defendant has not provided "any evidence that it has or intends to submit the arbitrability question to an arbitrator." (*Id*. at 4). However, ironically, the matter currently before the court is a motion to compel arbitration. The court views Defendant's motion – its first responsive filing – as sufficient evidence of the Defendant's intent to arbitrate.[4]

Next, Plaintiff suggests that rather than making an argument that only an arbitrator can determine arbitrability, "Vroom completely delegated the threshold question to this court, requesting the court to stay proceedings and compel arbitration of Powell's substantive claims." (Doc. # 43 at 4). This argument is equally unpersuasive. The threshold question has been presented to the court only insofar as Defendant is required to answer to Plaintiff's complaint. The catch-22 aspect of Plaintiff's position is readily apparent: if Defendant fails to respond, it is in default; if it responds, it may waive its right to elect arbitration. Plaintiff's contention that "[h]ad Vroom intended for an arbitrator [to] determine the issue of arbitrability, Vroom would have already taken steps to submit the issue to an arbitrator" is similarly without merit. Indeed, the court interprets Defendant's Motion to Compel Arbitration as just such a step. Because Defendant's conduct has been wholly consistent with an intent to enforce the arbitration clause, Defendant has not waived its right to do so.

## IV. Conclusion

Because the parties clearly and unmistakably agreed to delegate questions of arbitrability to an arbitrator, because Plaintiff failed to directly challenge that delegation provision, and because

---

[4] As explained above, the delegation provision was clearly and unmistakably agreed to. Further, Plaintiff's challenge is to the arbitration clause(s) as a whole, rather than to the delegation provision in particular. *Rent-A-Center*, 561 U.S. at 72-73 Thus, whether the claims are to be decided by an arbitrator and whether the arbitrability of the case is to be decided by an arbitrator are related questions.

Defendant did not waive its right to enforce the arbitration provision[s], Defendant's Motion to Stay Proceedings and Compel Arbitration (Doc. # 16) is due to be granted. A separate order in accordance with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this September 7, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE